1000

PHILIP W. BLOOD, FRED H. VICKARY, AND HENRY R. MAYO, EXEC-
UTORS OF THE WILL OF ARTHUR J. BLOOD, PETITIONERS, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39488.   Promulgated March 31, 1931.

*Henry R. Mayo, Esq.*, for the petitioners.
*John E. Marshall, Esq.*, for the respondent.

## OPINION.

SMITH: 1 and 2. The first question presented by this proceeding is the fair market value of certain shares of stock of the J. B. Blood Company owned by the decedent at the time of his death. The common stock was listed in the estate tax return at $100 per share, as was also the preferred stock. The respondent has determined that the fair market value of the common stock at the date of decedent's death was $143.80 and of preferred stock $116⅔ per share. The evidence shows that the only sales of the common stock at or about the date

of decedent's death were at a price of $135.40 per share and that the preferred stock never sold at a price in excess of $100 per share. Upon the entire record we find that the fair market value of the common stock was $135.40, and of the preferred stock, $100 per share.

3. The third question for our consideration is whether there should be included in the gross estate any portion of the value of insurance policies upon the life of the decedent.

Section 302 of the Revenue Act of 1924, the applicable statute, provides, so far as material to the issue involved as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*       \*       \*       \*       \*       \*       \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The petitioners claim that all of the insurance policies on the life of the decedent were payable to others than the executors or the estate of the decedent; that at the date of the death of the decedent the decedent had no right to change the beneficiaries; and that since he had no control over them they may not be included in the gross estate. The evidence submitted in this proceeding does not fully sustain the contentions of the petitioners as to the facts. The decedent clearly had the right to change the beneficiary on the John Hancock Mutual Life Insurance Company policy at the date of his death, the value of which policy is stated in the estate tax return to have been $25,238.25. An inspection of two of the policies issued by the Provident Life & Trust Company of Philadelphia, both dated May 31, 1906, were payable to the decedent if living on May 31, 1926. These policies had a surrender value. The decedent clearly had an interest in these policies at the date of his death, and for lack of evidence to the contrary we find that the value of that interest equaled the amounts paid to the decedent's widow, namely, $5,036.20 and $5,088.01. He also apparently had an interest in the policies issued by the Boston Fruit & Produce Association and the Exchange Mutual Benefit Association, of $730. We therefore find that the decedent had an interest in life insurance policies at the date of his death of the value of $36,092.46.

An inspection of the applicable statute, section 302 (g) of the Revenue Act of 1924, quoted above, shows that no part of the life insurance policies involved in this proceeding is to be included in the gross estate under the first clause of the paragraph. The second clause of the paragraph requires the inclusion in the gross estate of the total amount receivable by all other beneficiaries than the

executor as insurance under policies taken out by the decedent upon his own life in excess of $40,000. By the plain terms of the statute the total amount of the life insurance policies in question in excess of $40,000, or $81,989.82, is includable in the gross estate. We must hold that the respondent in including this amount in the gross estate followed the letter of the law so far as section 302 (g) of the taxing statute is concerned.

It is to be noted, however, that a majority of the policies involved were taken out prior to the effective date of the first estate tax act, namely, that of September 8, 1916.

In *Chase National Bank* v. *United States*, 278 U. S. 327, the question before the Court was whether there should be included in the value of the gross estate life insurance policies payable in terms to beneficiaries other than the decedent and his estate, the policies in question having all been issued subsequent to the effective date of the Revenue Act of 1921. The Court observed:

The statute in terms taxes transfers. Like provisions in earlier acts have been generally upheld as imposing a tax on the privilege of transferring the property of a decedent at death, measured by the value of the interest transferred or which ceases at death. * * * [Citing cases.]

The Court then, after citing *Saltonstall* v. *Saltonstall*, 276 U. S. 260, observed:

* * * But we think that the rule applied in *Saltonstall* v. *Saltonstall*, *supra*, to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers.

* * * * * * *

The plaintiff points to no requirement, constitutional or statutory, that the termination of the power of disposition of property by death whereby the transfer of property is completed, which we have said is here the subject of the tax, must be preceded by a transfer directly from the decedent to the recipient of his bounty, of the property subject to the power. And we see no necessity to debate the question whether the policies themselves were so transferred, for we think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chanler* v. *Kelsey*, 205 U. S. 466, * * *

In accordance with the decision of *Chase National Bank* v. *United States, supra*, we have many times held that insurance policies over which the decedent has power to change the beneficiary up to the date of death are includable in the gross estate. *Louis M. Weiller et al., Executors*, 18 B. T. A. 1121; *Edwin S. Rauh, Executor*, 19 B. T. A. 993; *William A. Cushman et al., Executors*, 19 B. T. A. 1012; *Fannie C. Richardson et al., Trustees*, 20 B. T. A. 728; *Elizabeth W. Driver, Executrix*, 20 B. T. A. 910.

As we understand the decisions of the Supreme Court upon this point, it is that where the decedent has such an interest in a policy upon his life as permits him to change the beneficiary up to the date of death, the proceeds of the policy are includable in the gross estate; but that where the decedent has no such interest there is no authority for including the value of the policy in the gross estate. To be sure, in such case death gives to the beneficiary of the policy the right to demand the proceeds of the policy. But nothing passes from the decedent's estate, and the estate of the decedent should not be burdened with a tax where there is no shifting of economic benefits which in any wise involves the estate of the decedent. This is the interpretation which we have placed upon the statute in *Helena Liebes, Executrix*, 20 B. T. A. 731, wherein we said:

> The principle of law underlying this decision, i. e., that a named beneficiary under an insurance policy which does not reserve to the insured the power to change the beneficiary has a vested right of which he may not be deprived without consent, is basic in insurance law. The cited case [*Lewellyn* v. *Frick et al.*, 268 U. S. 238] merely applied this principle to the incidence of the Revenue Act.
>
> While the above decision is not so broad as petitioner contends, it does suggest the test to be applied—whether or not the right to the proceeds had vested in the named beneficiaries.
>
> The same general question of law has been more fully discussed by the Supreme Court in three later cases, in all of which the opinion was rendered by the same learned Justice. *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Chase National Bank* v. *United States*, 278 U. S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. The rule to be found in these cases is that "a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death." Thus, if an insurance policy reserves to the insured alone, the power to change the beneficiary, no rights have vested in the beneficiary and the transfer is incomplete until the death of the insured. If, however, the policy names a beneficiary without power of revocation or requires the beneficiary's consent, the transfer is complete. The several policies before us must be tested by these principles.

That decision is controlling upon the question at issue. It remains to be considered how much of the value, if any, of the insurance policies upon the life of the decedent should be included in the value of the gross estate. It is to be noted that section 302 of the Revenue Act of 1924 provides that there shall be included in the gross estate

insurance policies " to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." We have found that the amount receivable by all of the beneficiaries on such policies was $121,989.82. If the decedent retained the right to change the beneficiary on all these policies, the total amount includable in the gross estate in respect of insurance policies would be $81,989.82, the amount included in the gross estate by the respondent on the audit of the return. *Chase National Bank* v. *United States, supra*. But since the decedent had the right to change the beneficiary on policies of a value of only $36,092.46, only that amount is includable in the gross estate.

4. The fourth question in issue is whether there should be deducted from the value of the gross estate $15,000 for charitable bequests not yet paid under the terms of the will. The petitioners rely upon *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, wherein the Court held that under a will giving the residuary estate to the testator's widow for life with authority to use from the principal any sum necessary to suitably maintain her "in as much comfort as she now enjoys" and giving property after her death to charities, gifts to charity were not so uncertain as to prevent deduction from gross income in computing the net estate under the provisions of the Revenue Act of 1918.

The applicable provision of the Revenue Act of 1924 is section 303, which provides so far as material:

For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—

> *     *     *     *     *     *     *

(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual, * * *

It is to be noted in the present proceeding that there is no basis laid down by which it may be determined whether the residuary estate will be invaded for the purpose of making payments to the beneficiary, the decedent's widow. The latter is left entirely to the discretion of the trustees. Under the will the trustees are authorized:

* * * whenever they deem it necessary or desirable for the maintenance or comfort of my said wife, to pay over to or use for the benefit of my said wife, from time to time, such part (or even the whole) of the principal fund of this trust as to my said trustees seems wise.

The facts in this case are substantially different from those which obtained in *Ithaca Trust Co.* v. *United States, supra,* upon which the petitioners rely. In that case the decedent had given the residue of his estate to his wife for life with authority to use from the principal any sum " that may be necessary to suitably maintain her in as much comfort as she now enjoys." The Supreme Court observed—

\* \* \* The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. \* \* \*

Here the evidence does not show the income of the decedent's widow or how much the trustees might consider necessary or desir-able for her maintenance or comfort. The matter was left entirely to the discretion of the trustees. Whether the charities would receive anything from the residuary estate was entirely contingent upon the action which might be taken by them. Contingent bequests to charity are not a legal deduction from the gross estate. *Humes* v. *United States,* 276 U. S. 487. The contention of the respondent upon this point is sustained.

5. The final point for decision is whether estates by the entirety in Massachusetts are includable in the gross estate to the full amount of the value of such estate. The record contains no evidence as to whether the surviving spouse contributed any amount for the purchase of the property. The inclusion by the Commissioner of the entire value of such estate is sustained upon the authority of *Tyler* v. *United States,* 281 U. S. 497; *Ida A. Smith et al., Executors,* 20 B. T. A. 41.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*