## Baranovich, Appellant, v. Horwatt.

Argued April 19, 1934.

468

Before Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker and James, JJ.

*John T. Duff, Jr.,* and with him *H. H. Fisher,* for appellant.

*Andrew G. Uncapher,* and with him *Carroll Caruthers,* for appellee.

Opinion by Baldrige, J., July 13, 1934:

"Are moneys due to the insured under a clause contained in a group life insurance policy providing for the payment of the face amount of the policy to the insured in the event of permanent disability subject to attachment at the instance of the insured's creditors?" is, as stated by appellant, the sole question involved in this appeal.

The insured executed a judgment note, dated October 13, 1931, payable to the appellant, in the sum of $460.70, on which a judgment was confessed, November 20, 1931. An attachment execution was issued, attaching the funds in the hands of the Aetna Life Insurance Company, which had issued a policy of group life insurance covering the employees of the United Engineering and Foundry Company, the employer of the insured. The policy provided that if the insured became totally disabled before the age of

sixty, the company would pay the employee, in lieu of all other benefits, the amount of insurance in force upon such employee's life at the time disability commenced.

It is conceded that Tony Harvath, the insured, became permanently disabled by reason of tuberculosis, and that he is entitled to benefits in the sum of $4,000.

The learned court below made absolute a rule to show cause why the attachment should not be dissolved. This appeal followed.

The Legislature passed a general act of assembly, approved May 17, 1921, P. L. 682, entitled: "Relating to insurance; amending, revising, and consolidating the law providing for the incorporation of insurance companies," etc. Article 4 of that act was amended by the Act of April 26, 1929, P. L. 785, §1, which includes in its title, "defining and regulating group life insurance, and exempting policies of group life insurance and the proceeds thereof from execution." Section 418 of the amending act (40 PS §534) reads: "Exemption from Execution. No policy of group insurance, nor the proceeds thereof, when paid to any employee or employees thereunder, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of such employee, or his beneficiary, or any other person, who may have a right thereunder, either before or after payment, nor shall the proceeds thereof, when not made payable to a named beneficiary, constitute a part of the estate of the employee for the payment of his debts."

The appellant contends that as the policy includes provisions for indemnity against disability, it is dual in its nature, and, as the rights of the insured depend upon the disability feature, the fund was not exempt from attachment until the passage of the Act of May

4, 1933, P. L. 276, entitled: "Exempting the net amount payable under policies of accident and disability insurance from the claims of creditors." This argument requires a consideration of the nature of the policy, and of our statutes.

The intent of the parties to the contract of insurance, undoubtedly, was to pay benefits to the employee or his beneficiary. It was never meant to be for relief of creditors. It is a matter of general knowledge that life insurance policies are termed, "general," "ordinary," "old line," "paid-up," "tontine," "assessment," "endowment," etc.,—dependent upon the terms and conditions of the different forms of contracts. The newer forms of policies and their broader provisions are designed to meet competition between the companies and to attract purchasers. Cooley on Insurance, Vol. 1, pp. 782, 783, states: "Life insurance is not, however, necessarily insurance for the full term of one's life. Some life policies are contracts of investments as well as of insurance." The addition of these new features does not divest the policy of its chief character, or make it other than a life insurance policy. We do not recall any policy of group life insurance that we have had to consider, and there have been a number of them, that did not contain a disability provision. In passing upon policies containing total disability provisions, the courts have expressly referred to them as life insurance policies: Elwood v. New England Mut. L. Ins. Co., 305 Pa. 505, 158 A. 257; Perlman v. N. Y. Life Ins. Co., 105 Pa. Superior Ct. 413, 161 A. 752.

In construing the Act of 1921, as amended, supra, to determine whether the appellee comes within its provisions, we must consider not only the origin of the act, but "every word of the amended statute": Com. v. Great American Indemnity Co., 312 Pa. 183, 194, 167 A. 793. Concluding as we do that the con-

tract, in its broad terms, is a life insurance policy, we think there is no doubt that the amended act is applicable, and that the benefits payable to the insured came within the exemption clause.

The appellant further contends that, if we adopt a construction of the act that results in exempting the fund from attachment, the act is unconstitutional as a species of special legislation. We are not required to consider that position as it was not suggested or argued before the trial court (New York & Pa. Co. v. N. Y. Cent. R. R., 267 Pa. 64, 110 A. 286); nor is it mentioned in the statement of questions involved: Steel et al. v. Snyder et ux., 295 Pa. 120, 126, 144 A. 912. But aside from such a warranted technical disposition of the question, we find the appellant's contention without merit. No Pennsylvania authority is cited in support thereof. "A construction that invalidates an act must, under all circumstances, be rejected for one, supported by reason, which will not conflict with the Constitution; for a court is obliged to resolve every doubt in favor of the validity of legislation, and can never accept as correct a meaning which conflicts with the organic law if such a course can reasonably be avoided": Com. ex rel. v. Benn, 284 Pa. 421, 442, 131 A. 253; Reeves et al. v. Phila. Sub. Water Co., 287 Pa. 376, 386, 135 A. 362. So long as exemptions or classifications are not arbitrary, they are valid, and they have been uniformly so recognized in this Commonwealth. We have no trouble in reaching the conclusion that the provisions of the Act of 1921 and its amendment are reasonable.

The Act of April 15, 1845, P. L. 459, §5 (42 PS §886) exempts wages from attachment. Section 318 of the Workmen's Compensation Act of 1915, P. L. 736, 749 (77 PS §621), exempts payments from claims of creditors and from levy, execution or attachment. The Act of May 20, 1921, P. L. 916, §11 (40 PS §1022),

exempts moneys or benefits due from fraternal benefit societies from attachment by creditors. These are illustrations of the well recognized policy of this Commonwealth to grant immunity to attachment of certain moneys that may be due. Many other statutes have been passed to safeguard dependents, wage earners and materialmen because of their inability to protect themselves adequately: Com. v. Great American Indemnity Co., supra (312 Pa. 196). Speaking through Judge KELLER, in the case of Com. v. McDermott, 94 Pa. Superior Ct. 470, 478, we said: "In our opinion the exemption from the operation of the statute of the classes of organizations specified in Section 11, is not an arbitrary and unreasonable distinction intended to grant special privileges to a favored few but is based on reasonable grounds, sufficient to justify the Legislature in excluding such organizations, etc., from the force and effect of the statute, if it saw fit to do so." We find no constitutional inhibition in exempting moneys due under an insurance policy from attachment by creditors. It is only just and humane to exempt funds from attachment due one who has been disabled from earning a livelihood and keep him from becoming a charge on others or the state.

The appellant has called our attention to Chattanooga Sewer Pipe Works v. Dumler (Miss.), 120 So. 450. But there the facts differ from the case at bar, and the provisions in the "Hemingway Code" of 1927 are dissimilar to our statute.

Judgment is affirmed.