ABRAHAM J. SLURSZBERG AND AARON A. MELNIKER, RE-
CEIVERS OF JEWETT REALTY CORPORATION, PLAIN-
TIFFS, v. THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA, A CORPORATION OF NEW JERSEY, DE-
FENDANT.

Decided February 11, 1936.

For the plaintiffs, *Frank W. Heilenday.*

For the defendant, *Perkins, Drewen & Nugent.*

ACKERSON, S. C. C.   The first amended complaint herein
having been previously stricken out upon motion, the defend-
ant now moves to strike the second amended complaint upon
the grounds that it is frivolous; shows no right, title or
interest in the plaintiffs to the cash surrender value of the
insurance policy upon which the action is based, and that the
proceeds of said policy are exempt from the claims of
creditors.

The second amended complaint discloses that on May 5th,
1925, the defendant company issued its policy of insurance on
the life of Thomas Sluberski in the sum of $5,000, payable
to said Sluberski twenty years after the date of the policy,
provided insured is then living, or in the case of the prior
death of the insured, then to his wife as beneficiary, with the
right reserved by the insured to change the beneficiary and
providing for a cash surrender value  to the insured under
certain specified conditions after the second year, increasing
in amount each year.   It is specifically alleged that the pre-

miums were paid in full until April 1st, 1931, at which time the cash surrender value of the policy was $1,247.40.

The complaint further alleges that on November 29th, 1928, the insured became indebted to the Jewett Realty Corporation in the sum of $1,600, and on March 5th, 1932, a receiver of said corporation recovered a judgment against said insured for $1,417, and that on April 15th, 1932, the right, title and interest of the insured in said policy of insurance was sold by the sheriff under an execution upon said judgment to said receiver, and the policy was delivered to him. A copy of the policy in question is now annexed to and made a part of this complaint and by amendments the complaint is further made to allege that both the assured and the beneficiary were alive at the time of said levy and sale of said policy and are still alive; that "no claim for exemption pursuant to sections 38 and 39 of the New Jersey Insurance law (2 *Comp. Stat., p.* 2850) was made either by Thomas Sluberski or any other person;" that, "by virtue of said execution levy and sale, all of the right, title and interest of said Thomas Sluberski" (the assured) "in and to said policy, * * * was assigned by operation of law" to said receiver, and "on or about April 20th, 1932, a written notice of said assignment was delivered to the defendant and accepted by it, and the said policy was duly surrendered to the defendant and demand made * * * for its cash surrender value, but the defendant refused and still refuses to pay the same or any part thereof," and that at said times the "policy was in full force and effect." It is further alleged that the plaintiffs were duly substituted as receivers of the Jewett Realty Corporation. It is important to note, however, that the complaint does not allege that the insured, Thomas Sluberski, ever assigned the policy to the plaintiffs or their predecessor, nor that he ever exercised his right to surrender the policy and receive the cash surrender value, or authorized the plaintiff to do so, or ever changed the beneficiary. Furthermore, it is not alleged that the sale by the sheriff is expressed in any writing, nor that the alleged assignment "by operation of law" is evidenced by any written instrument whatsoever, nor that plaintiffs or their predecessor ever applied to change the beneficiary.

Since the plaintiffs are, in legal contemplation, creditors of the insured, it follows that the legal sufficiency of the complaint in this action depends in the first place upon whether the policy in question (or its alleged cash surrender value) is exempt from the claims of the creditors of the insured by virtue of section 38 or 39 of the "Insurance act" (*Pamph. L.* 1902, *p.* 422; 2 *Comp. Stat.* 1910, *p.* 2850), which provides as follows:

38. "When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; * * *; provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; * * *."

39. "Every policy of life insurance made payable to or for the benefit of a married woman * * *, whether procured by herself, her husband, or by any other person, * * *, shall inure to her separate use and benefit, and to that of her children according to the terms and provisions of the policy * * *, subject to the above provisions relating to premiums paid in fraud of creditors."

Plaintiffs insist, in the first place, that these sections of the "Insurance act" do not apply to the policy in question because it is asserted that the policy is an endowment policy, a mere device for saving, and not a life insurance policy as contemplated by the foregoing statute; and that in any event the insured is the present "lawful beneficiary," and in order to be exempt from execution, the policy must be "in favor of some person other than himself" (the insured).

The difficulty with the first contention is that, while the policy in question may contain investment features so far as the endowment provision is concerned, nevertheless, the policy contains a definite life insurance feature also, and the legislature did not specify that the exemption would not apply if

the policy contained features and benefits in addition to regular life insurance. The legislature was concerned with protecting the future of those dependent upon the continued life of the insured no matter by what name the policy is designated or how many other features or benefits it may contain.

It is a matter of common knowledge that life insurance policies are termed "general," "ordinary," "old-line," "paid-up," "tontine," "assignment," "endowment," &c., dependent upon the terms and conditions of the different forms of contracts. The newer forms of policies and their broader provisions are designed to meet competition between the companies and to attract purchasers. In 1 *Cooley on Insurance* 782, 783, we find this statement:

"Life insurance is not, however, necessarily insurance for the full term of one's life. Some life policies are contracts of investment as well as of insurance."

The addition of these new features does not, however, divest the policy of its chief character, or make it other than a life insurance policy. *Baronovich* v. *Horwatt* (*Aetna Life Insurance Co.*) (*Pa.*), 173 *Atl. Rep.* 676.

Regarding plaintiff's second contention it may be said that while the endowment or investment feature of this policy is payable to the insured, contingent, of course, upon his being alive at the end of twenty years from its date, nevertheless, the life insurance provision of the policy covering the intervening period is "in favor of some person other than himself," and so falls within the specification for exemption required by the statute. The plaintiffs overlook these separate and distinct features of the policy.

The plaintiffs further claim that sections 38 and 39 of said "Insurance act," *supra*, are unconstitutional in that they violate article 4, section 7, subsection 4 of the state constitution, which provides that:

"To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other every law shall embrace but one object, and that shall be expressed in the title."

The full title of the act in question is:

"An act to provide for the regulation and incorporation of insurance companies and to regulate the transaction of insurance business in this state."

It is argued that the aforesaid sections of the "Insurance act" make the legislation dual in character, *i. e.*, insurance, and the exemption of the proceeds thereof from execution, and that the latter object is not expressed in the title of the act.

The test to be applied in determining this question is found in *Stockton* v. *Central Railroad Co.*, 50 *N. J. Eq.* 52, 70, where it is said:

"The end aimed at is that each law shall have a single *general* object, which shall be stated in its title, and that all parts of the law shall be germane to that one subject." (Italics mine.)

The origin of life insurance is traceable to benevolent motives, the object being to secure to the family of a person who is dependent on a salary, or other income which ceases with his life, a support upon the death of insured, by small contributions from the annual income. 37 *C. J.* 360, § 3.

Sections 38 and 39 of the act in question are clearly germane to the subject of life insurance, and are intended to secure its primary object as above explained, *i. e.*, to secure to the widow of the insured a support upon his death by keeping the proceeds of the policy intended for her benefit free from the claims of the insured's creditors. The "transaction of insurance business" not only comprehends the writing of policies upon the life of an insured, but also the payment of the proceeds thereof at his death. Hence the protection of such proceeds to effectuate the object of the insurance as above expressed is germane to the subject of transacting insurance business.

It seems idle to argue that legislation upon the subject of life insurance becomes dual in purpose when all parts of the act seek to carry out the very object of the business it intends to regulate. The criticised sections of the act in question do not amount to "intermixing in one and the same act such things as have no proper relation to each other." The construction of this legislation contended for by the plaintiffs is

too narrow and limited; it would leave the law powerless to carry out the fundamental legislative intent as evidenced by the entire act.

The complaint also contains the allegation that "no claim for exemption, pursuant to sections 38 and 39 of the New Jersey Insurance law was made by either Thomas Sluberski or any other person," and it is argued under this phase of the pleading that failure to claim exemption would amount to a waiver of any rights by the beneficiary of the policy.

In the first place it must be noted that a *waiver* is not pleaded. All that is asserted is that "no claim for exemption * * * was made by either Thomas Sluberski or any other person." It seems sufficient to observe that notice is a necessary element of waiver, and it is not alleged that the assured wife, as beneficiary, had notice of the aforesaid execution sale and the alleged demand by the plaintiff for the cash surrender value of the policy. It is the beneficiary who is protected by the statute, not the assured.

In the second place, sections 38 and 39 of the act in question, do not require a "claim for exemption," * * * if the beneficiary's rights can be thus designated, in order to secure the protection provided for therein. These sections automatically become a part of every policy of insurance provided a benefit for a beneficiary in the event of the death of the insured, and must be observed as a part of its contractual obligation by every such insured.

The plaintiffs also contend in their brief that the beneficiary named in the policy *sub judice* is merely an expectant beneficiary and has no present interest in the policy.

A careful reading of the legislation in question, however, in the light of what has already been said, will inevitably lead to the conclusion that by whatever term the beneficiary's interest may be designated, particularly if the policy provides a benefit for a married woman, it shall, in the language of the statute, "inure to her separate use and benefit," subject only to a claim for "premiums paid in fraud of creditors," whether her interest is vested or contingent, present or future. The aforesaid sections of the "Insurance act" protect her, as against the insured's creditors, so that with the happening of

the contingency upon which the *enjoyment* of her "benefit" depends, the proceeds of the policy will be available for her.

We now come to the fundamental ground upon which plaintiffs rest their alleged cause of action, *i. e.,* that the cash surrender option given by the policy to the insured, in the exercise of which the beneficiary has no voice, is a property right in the insured which is available to his creditors upon execution.

No claim is here made on the theory that the premiums paid on this policy were in fraud of creditors, and rights reserved to creditors under such circumstances by the above quoted sections of the "Insurance act" are not involved. The sole claim presented being the asserted right of a creditor to resort to the insured's *unexercised* cash surrender option.

The plaintiffs point out that the policy in question specifically reserves to the insured the right to change the beneficiary, surrender the policy for its cash surrender value at will, and recognizes his legal right to assign his right, title and interest therein. They, therefore, argue that, since the insured's right to surrender the policy for its cash surrender value is superior to the right of the beneficiary therein, this right must necessarily pass under a creditor's execution sale of the right, title and interest of the insured in the policy. In other words, it is contended that the purchaser at such sale, may, in the language of the policy, "legally surrender" the policy and obtain its cash surrender value, without the consent of the insured manifested in the manner required by the policy.

To sustain such a claim would wholly destroy the intent and purpose of the legislation in question and deprive beneficiaries in such cases of the protection the legislature intended for them. A policy thus surrendered would not be "legally surrendered" within the meaning of the policy if its effect would be to defeat the object of the statute.

The mere reservation of the insured of the right to nullify or destroy the interest of the beneficiary whether we consider it vested or contingent, cannot be extended or enlarged to such an extent that the reservation is to be regarded as operating automatically from the time it was made, which

would have the effect in such policies of cancelling the interest of the named beneficiary at the same instant such interest was created. To hold thus would not only be an absurdity, but would be violative of the policy adopted by the legislature in the enactment of sections 38 and 39 of our "Insurance act."

While it may be true that the insured may cash in his policy without regard to the wishes of the beneficiary; that reserved right, since the insurance was effected and taken out for the benefit of the latter, to give force and effect to the statute, must, as to creditors seeking to exercise it in the place and stead of the insured, where the latter has not acted, be deemed and held subordinate to the rights of the beneficiary. There are no sound reasons, either in morals or in equity and good conscience, why the creditor, to the detriment of the beneficiary, should be given the right and privilege of the insured in such cases. No credit is extended to the insured on the faith of the insurance, for all persons dealing with him are bound to know the law, and that money to become due thereon, when payable to a third person, having an insurable interest, is exempt from their claims. The legislature was careful to protect the just claims of creditors, and to give them all that they could equitably ask for, when it provided at the end of section 38 of the "Insurance act" as provided: "Provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy." A similar provision is found at the end of section 39 of said act, thus clearly evincing a legislative intent to provide for the just claims of all concerned in such policies and defeating the plaintiffs' contention that to deny their claim would be establishing a haven for fraudulent debtors.

The statute is wise in its purpose, securing as it does after the death of the insured, pecuniary aid and assistance to the beneficiary, usually some one who is dependent upon the insured for support, and should not be frustrated or impaired by opening the door to those who have no just or equitable claim to the money. This view is amply sustained by author-

ity construing similar statutes. 25 *C. J.* 74; *Murphy* v. *Casey* (*Minn.*), 184 *N. W. Rep.* 783; *Schuler* v. *Johnson* (*S. D.*), 246 *Id.* 732; *Holden* v. *Stratton*, 192 *U. S.* 202; *In re Messinger* (*C. C. A. 2d*), 29 *Fed. Rep.* 158; 68 *A. L. R.* 1205; *In re Orear* (*C. C. A. 8th*), 189 *Fed. Rep.* 888; *In re Booss*, 154 *Id.* 494; 18 *Am. B. Rep.* 658; *Moser* v. *Com. Mut. Life Insurance Co.*, 137 *Ky.* 215; 119 *S. W. Rep.* 792; *Bailey* v. *Wood*, 202 *Mass.* 563; 89 *N. E. Rep.* 149; *In re Pinals* (*United States District Court of New Jersey*, 1930), 38 *Fed. Rep.* 117. See, also, *G. P. Farmer Coal and Supply Co.* v. *Albright*, 90 *N. J. Eq.* 132; 106 *Atl. Rep.* 545.

The plaintiffs rely very largely upon the case of *Blinn* v. *Dame*, 207 *Mass.* 159; 93 *N. E. Rep.* 601, as construing a statute almost identical with our own and taking a contrary view to that above expressed. In that case, however, the court was dealing with the effect of a written assignment of the policy by the insured, and so it is not at all helpful in the case *sub judice* where it is not alleged or claimed that the insured made any written assignment of the policy to his creditors.

Reference is also made to *Cohen* v. *Samuels*, 205 *U. S.* 202; 62 *L. Ed.* 145, as authority for the proposition that a trustee in bankruptcy is entitled to the cash surrender value of an insurance policy, and plaintiffs claim in their brief that this right is exercised every day by trustees in bankruptcy. This may be conceded where exemption laws do not protect the proceeds of such policies from the claims of creditors as in the cast last cited. But *Holden* v. *Stratton, supra,* is of equal authority for the proposition that a trustee in bankruptcy is not vested with the title of the bankrupt to insurance policies which come within exemptions given by the state law. *In re Orear, supra; In re Bray* (*U. S. D.*), 8 *Fed. Supp.* 761. Our "Insurance act" provides for such exemption.

I am not prepared to say that the vast number of life insurance policies containing clauses reserving to the assured the right to change beneficiaries, and containing cash surrender privileges, are outside of the protection afforded by sections 38 and 39 of our "Insurance act," where the assured has not voluntarily exercised such rights and privileges, nor

that sales of such policies under execution can have the effect of defeating the wholesome provisions of such legislation, where the assured has not so willed it, and has not paid premiums in fraud of his creditors. Such a construction would be contrary to the generally accepted meaning of such legislation, and defeat the very object thereof.

It should also be noticed, although not argued, that while the policy in question recognizes the legal right of the insured to assign his right, title and interest therein, nevertheless the exercise of this right is predicated upon certain definite conditions specifically and plainly expressed in the policy. It is settled that such conditions are conditions precedent which must be complied with in order to vest any rights under the policy in the assignee as against the insurer. *Eldredge* v. *Mutual Life Insurance Co.* (*Mass.*), 105 *N. E. Rep.* 361; *Kothe* v. *Phoenix Mutual Life Insurance Co.* (*Mass.*), 168 *Id.* 737; *Gladman* v. *Moses* (*Mass.*), 191 *Id.* 873; *Boruszewski* v. *Middlesex Mutual Assurance Co.* (*Mass.*), 72 *Id.* 250; *Smith* v. *Scottish Union, &c., Co.* (*Mass.*), 85 *Id.* 841; *Sullivan* v. *Moroney*, 76 *N. J. Eq.* 104; *affirmed*, 77 *Id.* 565; *Anderson* v. *Broad Street National Bank*, 90 *Id.* 78; *affirmed*, 91 *Id.* 331.

One of the conditions pertaining to the right to transfer the insured's right, title and interest in the policy *sub judice*, is expressed therein as follows: "Any assignment of this policy must be in writing, and the Company shall not be deemed to have knowledge of such assignment unless the original or a duplicate thereof is filed at the Home Office of the Company." No exception is made of an assignment arising from the sale of the insured's rights under execution. It would seem, therefore, that, as against the insurer, such a transfer would have to be evidenced by a written instrument either from the sheriff, or the execution debtor. The complaint, however, fails to allege any written transfer whatsoever. It is alleged that: "On or about April 20th, 1932, a written notice of said assignment was delivered to the defendant, but this refers to notice of the alleged assignment by operation of law" referred to in the preceding paragraph.

It is not alleged that the assignment itself was evidenced by any writing.

It is also true that the complaint alleges that on or about April 20th, 1932, * * * said policy was "duly surrendered" to the defendant for its cash surrender value, but the quoted words constitute a bare conclusion of the pleader, not based on pleaded facts, and must be disregarded on this motion.

It follows from what has been said, that the defendant's motion must be granted and the second amended complaint stricken out upon all three grounds urged by the defendant as hereinbefore stated, and an order may be presented in accordance with the conclusion thus reached.