ESTATE OF WILLIAM G. THOMPSON, MARY H. THOMPSON, EXECUTRIX U/W WILLIAM G. THOMPSON, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96358. Promulgated April 23, 1940.

*George E. Mears, Esq.*, for the petitioner.
*T. G. Histon, Esq.*, for the respondent.

904

MURDOCK: Section 302 (g) of the Revenue Act of 1926 provides that the value of the gross estate of a decedent shall be determined by including the excess over $40,000 of the amount receivable by all beneficiaries other than the decedent's estate as insurance under policies taken out by the decedent upon his own life. The policies here in question were all taken out by the decedent upon his own life, and the amount receivable by his wife in excess of $40,000 has been included in the gross estate of the decedent under section 302 (g). The proceeds of the policies come within the words of the statute.

The Supreme Court has held, however, that this provision does not apply to the proceeds of policies taken out prior to its passage, where the right to exercise control over the disposition of the proceeds of the policies, as by changing the beneficiaries, borrowing on the policies, or surrendering them for cash, was not retained by the decedent for himself alone, that is, without the necessity of obtaining the consent of the beneficiary. *Lewellyn* v. *Frick*, 268 U. S. 238; *Bingham* v. *United States*, 296 U. S. 211; *Industrial Trust Co.* v. *United States*, 296 U. S. 220. The Court pointed out that if the law were applied in such cases, it would impose an unexpected liability on transactions then beyond recall, which liability might otherwise have been avoided. Cf. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Nichols* v. *Coolidge*, 274 U. S. 531; *Wyeth* v. *Crooks*, 33 Fed. (2d) 1018; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85. The Commissioner provided by regulation that the proceeds of all policies not receivable by the decedent's estate are to be included in the gross estate under section 302 (g) "regardless of when the policy was or the policies were issued, if the decedent possessed at the time of his death any of the legal incidents of ownership." Art. 27, Regulations 80. He also provided: "Legal incidents of ownership in the policy include, for example: The right of the insured or estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." Art. 25, Regulations 80. All of the policies here in question were taken out long before the effective date of the first estate tax act. The petitioner contends that the

decedent, acting alone, had no control over the disposition of the proceeds of these policies at any time after the enactment of the first estate tax act and, therefore, the proceeds are not taxable under section 302 (g). This is obviously incorrect as to policy No. 13 over which he had full control from December 9, 1929, until January 9, 1930, and section 302 (g) would clearly apply as to that policy. It will be excluded from the discussion which follows.

The respondent has at all times agreed that the decedent had no power to change the beneficiary of any of these policies without the consent of that beneficiary. The respondent, in determining the deficiency, was of the opinion that the decedent had retained the right to surrender the policies for cash without obtaining the consent of the beneficiary. His counsel conceded at the hearing that under the laws of Massachusetts, governing six of the policies, the decedent had retained no power to surrender or cancel those policies or to obtain loans upon them, without obtaining the consent of the beneficiary. But, since the laws of other states governed the decedent's rights in the other policies, he expected to show that the decedent retained the right to surrender those policies for cash and to obtain loans upon them without the consent of the beneficiary. His investigation of the law on the subject must have convinced him of his error because he did not mention the subject in his brief. Counsel for the petitioner devoted his original brief to authorities showing that the decedent had no power to change the beneficiary, no power to surrender or cancel any policy, no power to assign any policy, no power to pledge any policy for a loan and no power to obtain a loan from the insurer against the surrender value of any policy, without first obtaining the consent of his wife, the beneficiary. The authorities which we have been able to find also support this contention of the petitioner.

The designation of a beneficiary in a policy of insurance is in the nature of an executory trust for his benefit, and, unless the insured expressly reserves the right to himself, the beneficiary can not be deprived, without his consent, of the benefits which would otherwise flow to him under the terms of the policies. *Central Bank of Washington* v. *Hume*, 128 U. S. 195; *Bingham* v. *United States, supra; Industrial Trust Co.* v. *United States, supra; Ballard* v. *Helburn*, 9 Fed. Supp. 812; *Tyler* v. *Treas. & Rec'r. Gen'l.*, 226 Mass. 306; 115 N. E. 300; *Mutual Benefit Life Insurance Co.* v. *Swett*, 222 Fed. 200; *David A. Reed et al., Executors*, 24 B. T. A. 166; *Louise C. Moore, Executrix*, 33 B. T. A. 108; *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970; *Walker* v. *United States*, 83 Fed. (2d) 103; *Landrum* v. *Knowles*, 22 N. J. Eq. 594; *Sullivan* v. *Maroney*, 77 N. J. Eq. 565; 78 Atl. 150; *Pingrey* v. *National Life Insurance Co.*, 144 Mass. 374; 11 N. E. 562. The above cases hold that if the insured

has not expressly reserved the right, he may not change beneficiaries, obtain loans on the policy, surrender the policy for cash, assign it, or in any other way minimize or jeopardize the rights of the beneficiary. Cooley, in his Briefs on the Law of Insurance, describes the right of an irrevocably named beneficiary as a vested interest in the policy of which he can not be divested without his consent. Vol. VII, p. 1568. See also *Pennsylvania Co. for Insurances on Lives & Granting Annuities* v. *Commissioner*, 79 Fed. (2d) 295; certiorari denied, 296 U. S. 651; *Metropolitan Insurance Co.* v. *Clanton*, 76 N. J. Eq. 4; 73 Atl. 1052; *Prudential Insurance Co.* v. *Deyerberg*, 101 N. J. Eq. 53; 137 Atl. 785; *Sullivan* v. *Maroney, supra.*

There is a law of Massachusetts to the effect that every policy of life or endowment insurance in which a married woman is the beneficiary, shall enure to her separate use and benefit regardless of whether the insured reserved the right to change the named beneficiary. General Laws of Massachusetts, ch. 175, sec. 126. The court, in *Gould* v. *Emerson*, 99 Mass. 154, while discussing this statute, said that the interest of a man's family in his life and a man's duty to make provision for the support of his family are not always subordinate to the claims of his creditors, and, where he has once named his wife irrevocably as beneficiary of insurance on his life, her rights are secure beyond the claims of creditors and beyond the power of the insured himself, who is restrained "from revoking, in a moment of caprice or embarrassment, the trust which he has once created upon a meritorious, and, by the statute, a sufficient consideration." The law of Wisconsin was somewhat similar. *Boehmer* v. *Kalk*, 155 Wis. 156; 144 N. W. 182; *Ellison* v. *Straw*, 116 Wis. 207; 92 N. W. 1094.

The policies of insurance involved in this proceeding were policies of life insurance. *Slurszberg* v. *Prudential Insurance Co. of America*, 192 Atl. 451; *Baranovich* v. *Horwatt*, 113 Pa. Super. 467; 173 Atl. 676; *Briggs* v. *McCullough*, 36 Cal. 542; Cooley, vol. I, p. 19. No one contends to the contrary and the determination of the Commissioner was made on that theory. Cooley, citing *In re Dreuil & Co.* (U. S. Dist. Ct., La.), 221 Fed. 796, and *Wallace* v. *Mutual Benefit Life Insurance Co.*, 97 Minn. 27; 106 N. W. 84, states that the right of a beneficiary irrevocably named in an endowment policy of insurance likewise has a vested interest, and his right to receive the proceeds in accordance with the terms of the policy may not be defeated by any act of the insured done without his consent. Vol. II, p. 1091; vol. VII, p. 1569. The New Jersey court in the *Slurszberg* case, *supra*, held that creditors of one insured under an endowment policy of insurance could not obtain the cash surrender value of the policy by execution or otherwise without the consent of the death bene-

ficiary named in the policy. An endowment policy on the life of Simmons was involved in the case of *In re Simmons & Griffin* (C. C. A., 1st Cir.), 255 Fed. 521. He had designated his wife as beneficiary in case she survived him and the policy became payable by reason of his death. Thereafter, he was adjudicated a bankrupt and the referee ordered him to make available to his creditors the cash surrender value of the policy. The court held that the cash surrender value was not available to creditors because the policy could not be surrendered without the consent of the beneficiary, his wife, and the bankrupt had no pecuniary interest in the policy which could pass to the trustee without the consent of the beneficiary.

The case of *Philip W. Blood et al., Executors*, 22 B. T. A. 1000, referred to by the respondent in explanation of his determination and cited by him in his brief, is not in point. There, the value of certain policies, including two endowment policies, was included in the gross estate solely on the ground that the decedent retained the power to change the beneficiary up to the date of his death. Here the decedent retained no such power and that difference in fact distinguishes the two cases. The same difference in the facts also distinguishes this case from that of *Edith Huggard Sharp et al., Executors*, 30 B. T. A. 532; 33 B. T. A. 290.

The excess of the proceeds over $40,000 amounts to only $10,644.33, and if that excess is eliminated no amount may be included in the gross estate under section 302 (g). Seven of the policies involved in this proceeding contain a statement that the insured retained no power to change the beneficiary. The proceeds of those policies amount to $20,841.46. Other policies contain a provision that the insured can make no change in the beneficiaries unless that right is expressly reserved. None of the policies contained any express reservation of a right by the insured to change a beneficiary, to surrender the policy for cash, or to borrow on the policy, without the consent of the beneficiary. It seems proper to conclude from the authorities cited by the petitioner and from others which we have examined, that the insured under these policies of insurance had no power to name another beneficiary in place of his wife, to obtain the cash surrender value, to obtain a loan upon a policy, or in any other way change the interest of the beneficiary, his wife, in the policies at any time after the effective date of the first estate tax act. Therefore, the Commissioner erred in including the amount of $10,644.33 in the gross estate under section 302 (g).

The respondent does not argue in his brief that the decedent retained the power to change the beneficiary in any policy, to surrender it for cash, or to borrow on the policy. The only contention which he makes is that the proceeds were properly included in the

gross estate under section 302 (g) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934, because the decedent was the "prime beneficiary" of each policy, entitled to receive the entire proceeds when it matured, whereas the wife had only a contingent interest entitling her to receive the proceeds in case her husband died prior to the maturity date of the policy while she was still alive. He cites no authorities supporting this contention, and he errs in stating that a wife who is irrevocably named a beneficiary in an endowment policy of insurance has only a contingent interest. See the authorities cited above holding that she has a vested interest. Section 404 of the Revenue Act of 1934 merely amends the general provision at the beginning of section 302 of the Revenue Act of 1926 to eliminate real property situated outside the United States. It has no significance in the present case. While it is true that the decedent would have been entitled to receive the face amount of each policy had he lived until it matured, that circumstance does not lead to the conclusion that the proceeds of the policy received by the wife are to be included in the gross estate under section 302 (g). Endowment policies of insurance like these may be divided into two parts—first, a contract of endowment and, second, a contract of insurance. S. S. Huebner, Life Insurance, 1935 ed., p. 102. The decedent alone had a chance of benefiting from the endowment feature of the policy. He would have received that benefit had he lived until it matured, but his death put an end to the possibility. The right to the endowment did not pass to anyone else at his death and thus his interest in the policy was obliterated by his death. Cf. *May* v. *Heiner*, 281 U. S. 238; *Carr* v. *Hamilton*, 129 U. S. 252; *Bingham* v. *United States, supra; Chase National Bank* v. *United States*, 278 U. S. 327. He was not a beneficiary of the insurance feature of the contract. His wife was the beneficiary there. Although his death made it certain that she would receive the insurance proceeds, nevertheless her rights were fixed by the contract and nothing passed from him to her at his death. Cf. *Walker* v. *United States*, 83 Fed. (2d) 103; *May* v. *Heiner, supra; Bingham* v. *United States, supra; Ballard* v. *Helburn, supra; Guaranty Trust Co. of New York et al., Executors*, 33 B. T. A. 1225. The rights of the beneficiary under these policies were fixed prior to the enactment of the first estate tax act. The decedent had no power to change those rights. The contention made by the respondent does not serve to distinguish this case from the *Frick* and *Bingham* cases. The principles laid down by the Supreme Court in those cases apply to these policies of insurance so that none of the proceeds may be included in the gross estate under section 302 (g), the only section which the Commissioner seeks to apply.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

BLACK, dissenting: I accept the view of the majority opinion in saying that as to none of the policies involved in this proceeding did the decedent at the time of his death have the right to change the beneficiary of the life insurance provided by the policies, nor did he have the right to borrow on the policies or surrender them for their cash surrender value, without securing the consent of the life insurance beneficiary provided in the policies. Nevertheless, I think respondent should be sustained in his action in including the policies in decedent's gross estate, less the statutory exemption of $40,000.

The policies were all endowment policies and had definite maturity dates, which are set out in the findings of fact. The decedent undoubtedly was the owner of these endowment policies up to the moment of his death. The interest of the life insurance beneficiary in these policies was conditioned upon her surviving the decedent. That fact is shown from the following quotation from the findings of fact:

\* \* \* Each policy contained a provision that the amount of the policy was payable to the insured when all the annual payments had been made, but if he should die before that date survived by his wife, then the amount was to be paid to her at his death, otherwise to his executors or administrators.

It seems to me that this state of facts brings this case within the rule laid down by the Supreme Court in *Klein* v. *United States*, 283 U. S. 231, and *Helvering* v. *Hallock*, 309 U. S. 106. It is undoubtedly true, I think, that *Lewellyn* v. *Frick*, 268 U. S. 238; *Bingham* v. *United States*, 296 U. S. 211; and *Industrial Trust Co.* v. *United States*, 296 U. S. 220, support the conclusions reached in the majority opinion. However, it seems to me that these cases are no longer controlling as to such policies of insurance as we have in the instant case, by reason of subsequent decisions of the Supreme Court. For example, in the *Industrial Trust Co.* case, *supra*, the Supreme Court, speaking of subdivision (h) of section 302 of the Revenue Act of 1926, said:

Whether any of these terms apply to an amount receivable by a beneficiary under a policy such as we have here, is fairly debatable. See *Wyeth* v. *Crooks*, (D. C.) 33 Fed. (2d) 1018, 1019. If any of them do apply, the provision is open to grave doubt as to its constitutionality and the rule of the *Frick* case controls.

Subsequently the Supreme Court expressly decided, in *United States* v. *Jacobs*, 306 U. S. 363, that section 302 (h) of the Revenue Act of 1924 (same as in the 1926 Act) is constitutional and must be applied to cases which fall within its ambit. It is true that in the *Jacobs* case the question before the court related to the amount which should be included in decedent's estate because of his joint tenancy interest in some real estate, but the constitutional question is the

same as here.  Section 302 (h) requires that section 302 (g), relating to insurance policies, be retroactively applied the same as the provisions of the section relating to joint tenancy.  Therefore, because of the Supreme Court's decision in *United States* v. *Jacobs, supra,* and *Helvering* v. *Hallock, supra,* I think the Commissioner should be sustained in his determination of the deficiency in this proceeding.

On this account, I respectfully dissent from the majority opinion.

Smith, Turner, Disney, and Opper agree with this dissent.