166 N.J. Super. 111 (1979)
398 A.2d 1353
JOHN HIRKO, PLAINTIFF,
v.
MARY HIRKO ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 25, 1979.
Mr. Irwin P. Rosenthal for defendant (Messrs. Cannon & Rosenthal, attorneys).
Ms. Barbara Ulrichsen for John Hancock Insurance Company (Messrs. Mason, Griffin & Pierson, attorneys).
TAMS, J.S.C.
In this case the question is whether the cash surrender value of a life insurance policy is subject to *112 sequestration and levy for the payment of alimony or whether it is immune.
On June 24, 1977 a final judgment of divorce was entered herein where plaintiff husband was ordered to pay alimony to defendant wife of $75.00 per week. As part of equitable distribution plaintiff was awarded two life insurance policies on his life having a cash surrender value of $4,400. Immediately upon divorce plaintiff changed defendant from beneficiary and substituted his mother who was later made a party to this action; she has made no claim of irrevocable rights in the policies.
When plaintiff failed to pay alimony, defendant secured judgment for arrears against him in the sum of $2,325. Thereafter defendant moved by order to show cause against the insurer, John Hancock Insurance Company, restraining it from paying any of the cash value of the two policies to plaintiff, and subsequently a levy was made on the cash value of the policies by the sheriff. The insurance company then filed a motion resisting payment of the sums levied upon. By affidavit the company stated that plaintiff had applied for a loan in the maximum amount of both policies totalling $2,293; however, this was denied to him because of the pending litigation.
The insurance company filed a memorandum of law raising two principal defenses against payment: first that under N.J.S.A. 17B:24-6 the proceeds were exempt from levy, and second, that only a loan was requested by plaintiff and that, absent final cashing and surrender of the policies by the insured, no asset of plaintiff existed to be levied upon.
The insurance company relies heavily upon Slurszberg v. Prudential Life Ins. Co., 15 N.J. Misc. 423 (Sup. Ct. 1936), which holds that the statutory exemption of the proceeds of life insurance from the claims of creditors covers the cash surrender value as well as the insurance benefit. However, Slurszberg is distinguishable from the present case, for there plaintiffs were receivers of a realty corporation and determined by the court to be, pursuant to the statutory *113 definition, "in legal contemplation, creditors of the insured" (at 425). In the present case the creditor (defendant) is a former spouse, judgment creditor for alimony and not the ordinary "creditor(s) of the insured." As will be seen in the following cited cases, our courts have repeatedly held that an alimony judgment creditor stands in a special class outside that of a general creditor.
In Fischer v. Fischer, 13 N.J. 162 (1953), the Supreme Court held that Police and Firemen's Pension Fund benefits could be reached to satisfy a judgment for alimony notwithstanding a statutory provision, N.J.S.A. 43:16-7, that the fund benefits should be exempt from collection process. The court explained (at 168) that
* * * the essential purpose of such immunity from process is the protection not only of the pensioner, but of his family as well, from destitution and the need for public relief, and absent a clear and definite expression contra, the provision will not be read to enable the husband to claim the full benefit of the pension as against his dependent wife and children, and thus to subvert the laws enjoining upon the husband the performance of this basic obligation of the marriage state.
A workers' compensation award was reached for the satisfaction of a judgment for alimony and child support in Steller v. Steller, 97 N.J. Super. 493 (App. Div. 1967), notwithstanding the statutory provision, N.J.S.A. 34:15-29, that such compensation was not assignable and was exempt from all creditors for levy, execution or attachment.
A pension originating in a labor contract was reached by an alimony judgment creditor in Thiel v. Thiel, 41 N.J. 446 (1964). There the court stated (at 451) that "[r]egardless of the precise and restrictive wording of an exemption provision, the restraint created should not be a barrier against recourse to the fund when it provides the only reasonably accessible asset for support of the wife within her state of residence." And similarly in the present case, the insurance policies are the only assets of plaintiff available for *114 the support of defendant in this State. See also, Biles v. Biles, 163 N.J. Super. 49 (Ch. Div. 1978), and Ward v. Ward, 164 N.J. Super. 354 (Ch. Div. 1978), both respecting federal statutes with similar exemption provisions.
From the above cases it is beyond question that the statutory exemption created in N.J.S.A. 17B:24-6, must yield to the sequestration and levy by defendant as an alimony judgment creditor.
Notwithstanding the foregoing, the insurance company claims that, pursuant to the holding in Sokal v. Sokal, 92 N.J. Super. 220 (Ch. Div. 1966), the cash surrender value of a life insurance policy may not be reached by an alimony judgment creditor because there is no asset of the insured, in that no debt exists from the company to the insured until he presents the policy for cancellation and demands the cash surrender value. In Sokal the insured husband had not done this; since his whereabouts were unknown he had not been served with process in the suit. In the present case the insured husband is a party who was served with process and, in fact, made an application to the insurance company for a loan in the full amount available on his two policies of life insurance. Furthermore, the holding in Sokal does not appear to be consistent with the previous holding in David v. Metropolitan Life Ins. Co., 135 N.J.L. 106 (Sup. Ct. 1947), aff'd 136 N.J.L. 195 (E. & A. 1947), where the court stated:
* * * Where, as here, the donee beneficiary's appointment is revocable at the instance of the insured, and there is no provision contra, the insured may exercise, without the consent of the beneficiary, the power reserved to him to demand and receive from the insurer the cash surrender value of the insurance, and thus effect a cancellation of the policy, or "loans" upon the security of the policy within the cash surrender value. This is so whether the interest of the donee beneficiary be termed a vested defeasible right, payable if he survives the insured, and divestible only by a change of beneficiary in the mode and manner prescribed by the contract, or a mere expectancy that does not ripen into a vested and absolute right until the death of the insured without a change of beneficiary. Vide Metropolitan Life Insurance Co. v. Woolf, 138 N.J. Eq. 450. In such *115 circumstance, the interest of the beneficiary is subordinate to the insured's reserved absolute right to receive the cash surrender value, and thus to terminate the contract, or to have "loans" from the insurer on the security of the policy within the limit of the cash surrender value, with the right of repayment, at the prescribed rate of interest, and in this wise to restore the diminished insurance. Such is not a loan in the strict technical sense, for there is no obligation of repayment on the insured, but rather an advancement on the cash value of the policy, the repayment of which will reinstate the depleted insurance without the issuance of a new policy and the submission of evidence of insurability. A "loan" by the insurer in such circumstances does not give rise to the relationship of debtor and creditor. [at 109]
In short, the relationship of an insured to his insurance company where his life insurance policy has a cash loan value or a cash surrender value is not unlike that of a depositor and a bank in which he has deposits in an account.
It is informative to see how this type case has long been handled in the State of New York. See DeMatteis v. DeMatteis, 20 N.Y.S.2d 202 (Sup. Ct. 1940), and particularly Smith v. Smith, 198 Misc. 400, 98 N.Y.S.2d 802 (Sup. Ct. 1950), where a judgment creditor for alimony was permitted to reach the cash surrender value of policies of life insurance on the life of her former spouse. In making its decision the court discussed the contention that the asset was exempt from claims of creditors under a statutory provision of the New York insurance law and stated (at 803) that "the payment of alimony is regarded in a special status different from other creditor's claims, it has been held that the exemption provisions of Section 166, Insurance Law, are not applicable to an alimony judgment creditor."
The language of a later New York case is most appropriate to the insurance company's claim here that no debt exists to the insured plaintiff; in Rubenstein v. Rubenstein, 105 N.Y.S.2d 24, 26 (Sup. Ct. 1951), the court held that "the cash surrender value constitutes a debt even though not yet matured by the judgment debtor's voluntary act. Its [the insurance company] position seems no different in this respect from that of a promissor on a demand note."
*116 The rationale of the cited New York cases is quite consonant with the holding of our own courts in David v. Metropolitan Life Insurance Co., supra. For the foregoing reasons it is the opinion of this court that the cash surrender value of the two life insurance policies of plaintiff were properly sequestered for the payment of a judgment of alimony arrearages by defendant. An order consistent with these findings may be presented on notice.