OLD COLONY TRUST COMPANY, EXECUTOR OF THE WILL OF LOUIS E. FLYE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84321. Promulgated May 17, 1939.

*Alfred P. Lowell, Esq.*, for the petitioner.
*Louis S. Pendleton, Esq.*, for the respondent.

OPINION.

Van Fossan: In the first issue the petitioner contends that, since there was no obligation on the part of the executor (or any one administering the estate) to apply to debts, taxes, and expenses of the estate the proceeds of the 12 insurance policies which form the corpus of the trust of November 4, 1927, the second clause of section 302 (g)

of the Revenue Act of 1926 [1] applies and the exemption of $40,000 is allowable.

The respondent argues that the responsibility to pay the debts, taxes, and expenses of the decedent's estate was imposed by paragraph 6 of the trust agreement and the fact that the trustee could refuse to make such payments if, in its judgment it would be for the best interests of the beneficiary so to do, is immaterial.

Article 26 of Regulations 70 is in part as follows:

ART. 26. *Insurance in favor of the estate.*—The provision requiring the inclusion in the gross estate of all insurance receivable by the executor without any deduction, applies to policies made payable to the decedent's estate or his executor or administrator, and all insurance which is in fact receivable by, or for the benefit of, the estate. It includes insurance taken out to provide funds to meet the estate tax, and any other taxes or charges which are enforceable against the estate. The manner in which the policy is drawn is immaterial so long as there is an obligation, legally binding upon the beneficiary, to use the proceeds in payment of such taxes or charges. * * *

This language, which we think correctly interprets the intent of the statute (see *Marmaduke B. Morton, Administrator*, 23 B. T. A. 236) is plain in its meaning. The proceeds of an insurance policy are includable in the gross estate so long as there is an obligation, legally binding upon the beneficiary, to use them in payment of taxes or other charges enforceable against the estate. In the case at bar, there is no obligation binding on the beneficiaries, or the trustee representing the beneficiaries, to pay such debts of the estate. On the contrary, the trust agreement authorizes and permits but does not direct or require the trustee "if in its judgment it would be for the best interests of the beneficiaries" to "use and apply the principal and accumulated income of the trust estate to such extent as it may deem necessary for the payment of any debt of the Donor or for taxes."

In the exercise of its discretion—and undoubtedly for the beneficiaries' best interests which it was the duty of the trustee to conserve and protect—the trustee made no payment to the executor of the estate nor did it ever intend to do so. There is no "legally binding obligation" which would or could compel the trustee to pay such debts and charges against the estate. Therefore, this petitioner does not come within the inclusive provisions of the regulations and the $40,000 exemption applies.

In *Marmaduke B. Morton, Administrator, supra*, cited and relied upon by the respondent, the situation is quite different. There, under

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * * *

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

the will of decedent the proceeds of the insurance policies were subject to the payment of the charges against the decedent's estate and the expenses of administration. The evidence there disclosed that the insurance proceeds were mingled with other assets of the estate and a large part of the commingled funds paid out to satisfy debts and demands. We held that the respondent correctly had held the insurance proceeds to be a part of the gross estate and taxable under section 302.

The proceeds from the Travelers Insurance Co. group policy present a different problem. There the premiums were paid by both the decedent and the corporation to which the policy was issued. Article 25 of Regulations 70 provides in part as follows:

The term "insurance" refers to life insurance of every description, including death benefits paid by fraternal beneficial societies, operating under the lodge system. Insurance is deemed to be taken out by the decedent in all cases where he pays all the premiums, either directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all the premiums are actually paid by the beneficiary. Where a portion of the premiums were paid by the beneficiary and the remaining portion by the decedent the insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid.

In *Helvering* v. *Reybine*, 83 Fed. (2d) 215, article 25 was held applicable to the facts of that case. The decedent had paid 62 percent of the total premiums on the $30,000 Connecticut Mutual policy and 61.96 percent of the total premiums on the $50,000 policy issue by the same company. The court held that the insured's estate was liable to pay an estate tax on only that portion of the proceeds attributable to premiums paid directly by the insured. *Walker* v. *United States*, 83 Fed. (2d) 103. Cf. *Nelson* v. *Commissioner*, 101 Fed. (2d) 568.

The respondent relies on *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704, affirming 28 B. T. A. 888, but in that case the decedent purchased the interest of his employer in the policies by the payment of their cash surrender value and paid all subsequent premiums. Thus, the entire proceeds of the policies were acquired by the decedent through expenditures made by him. Here the decedent paid 19150/42215 of the premiums and his estate is taxable with that proportion of the proceeds.

The second issue involves the taxability of the property owned by the decedent and his wife as tenants by the entirety. Under section 302 (e) of the Revenue Act of 1926,[2] property owned by husband and

[2] (e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: * * *

wife as tenants by the entirety is properly included in the gross estate of the deceased spouse, provided no part of such property originally belonged to the survivor. *Tyler* v. *United States*, 281 U. S. 497. The petitioner contends that it is obviously a fact that the South Franklin Street property "originally belonged" to Mrs. Flye, since it passed to her under the will of her father Eugene Snell; that she conveyed it to her husband pursuant to their plan to place the title thereto in their joint names; that for various reasons the consummation of that plan was delayed for months and that it was ultimately accomplished by companion deeds of January 17, 1929, to and from Madeleine C. Hourihan.

The respondent narrows the controversy to an issue of fact when he states that "Annie L. Flye did not convey said property to the decedent as a part of a plan of eventually vesting title in themselves, as tenants by the entirety, even though she testified otherwise."

The record shows clearly that the original intention of the decedent and his wife was to hold the property as tenants by the entirety, and we have found such to be a fact. The respondent's position is supported by no contradicting testimony but solely by his argument that inference would lead to his conclusion. However, the petitioner's explanation of the delay in completing the joint ownership plan is reasonable, and, we think, entirely in harmony with the status of the parties and the circumstances surrounding the transaction. The decedent was a busy lawyer, with a large and exacting practice. He may have deferred attention to his own family affairs for an unusually long time, but intervening events, such as his attempt to sell adjoining property owned by him, the illness and death of his mother-in-law, and his wife's serious operation, furnish prima facie extenuating circumstances.

At most, the decedent could be charged only with procrastination. The record does not disclose the slightest suggestion that the deeds of January 17, 1929, were executed as the result of a sudden and independent notion to hold the property jointly. The fact that, until the decedent's death, the taxes and cost of repairs were paid from Mrs. Flye's own money is in itself strongly persuasive that it was the original and continuing purpose to shift the title to the decedent and his wife as tenants by the entirety. The agreed value of the South Franklin Street property, or $7,100, is not includable in the decedent's gross estate.

The third issue presents the deductibility of a claim of the Randolph Trust Co. representing the decedent's liability on two notes by reason of his endorsement thereof, as authorized by section 805 of

the Revenue Act of 1932.[3] Both notes were endorsed under similar circumstances. The makers were ultimately irresponsible, but the financial condition of Sharp at the time he executed the note is not shown. Hemenway acted as a "straw man." However, both obligations were secured by collateral as well as by the decedent's endorsement. At the time of the decedent's death both notes were overdue and unpaid. The Randolph Trust Co. filed its claim with the commissioners in insolvency and such claim, covering both liabilities, was allowed. The respondent contends that the decedent's endorsement was not made for an adequate and full consideration in money or money's worth and argues that, due to the financial irresponsibility of the makers, such endorsement was the equivalent of making a gift. He relies on *Commissioner* v. *Porter*, 92 Fed. (2d) 426, in which the court made the following comments:

* * * The purpose of the phrase under discussion was, in our opinion, to prevent a man from diminishing his taxable estate by creating obligations not meant correspondingly to increase it but intended as gifts or a means of distributing it after his death. See *Latty* v. *Commissioner*, 62 F. (2d) 952 (C. C. A. 6). Thus, if a guarantor reserve no recourse over against the principal in the transaction, the guaranty would be in substance a gift; * * *

However, we quote further from that opinion:

* * * But the present record does not disclose a transaction of that character. There is no evidence that the decedent surrendered his right of subrogation to the pledged collateral or his right to seek reimbursement from other property of his son-in-law should the guaranty be called. It is true that in October, 1931, when the guaranty was increased by $30,000, the collateral was $50,000 short of the loans, and that, as stipulated, the right of subrogation at the guarantor's death and at all times since was valueless. But the stipulation does not say that when the guaranty was given, the son-in-law was insolvent or that the guarantor had no reasonable expectation of reimbursement if he should be called upon to pay. So far as appears, it was an ordinary business transaction by which an accommodation guarantor, if required to pay, would acquire rights equal in value to the obligations he had assumed. The Board rightly held the claim deductible.

The decision in the *Porter* case is directly applicable to the case at bar. There is nothing in the stipulation or in the record which shows that either Sharp or Hemenway was insolvent at the time the decedent endorsed their notes. If the decedent had been held primarily responsible for the payment of the notes and had paid them at the de-

[3] SEC. 805. DEDUCTIONS.

Section 303 (a) (1) of the Revenue Act of 1926, as amended, is amended to read as follows:

"(1) Such amounts—
"(A) for funeral expenses,
"(B) for administration expenses,
"(C) for claims against the estate,

*        *        *        •        •        •        •

mand of the payee, he might have had recourse to the collateral to reimburse him, at least in part.

The respondent also cites *Latty* v. *Commissioner*, 62 Fed. (2d) 952, and *Glaser* v. *Commissioner*, 69 Fed. (2d) 254. In both of those cases, however, the claims were based on the decedent's promises to make future provisions for beneficiaries, the fulfillment of which would have resulted in gifts. Here the decedent had already obligated himself to pay the trust company the amount secured from it in cash by the maker of the note. The statute does not require that the consideration on which the claim is based should have been received by the decedent. *Commissioner* v. *Porter*, *supra*, and cases there cited; *Estate of Hugo Goldsmith*, 36 B. T. A. 1201.

The claim of the Randolph Trust Co. based on both the Sharp and Hemenway payments, is properly deductible from the decedent's gross estate.

*Decision will be entered under Rule 50.*