Estate of John E. Cain, Sr., Emma Weitmuller Cain, Executrix, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 101330. Promulgated March 26, 1941.

*James W. Allen, C. P. A.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

## OPINION.

HARRON: The main question is whether all or any part of the proceeds of the insurance policy in the face amount of $50,000 which was issued by the Sun Life Assurance Co. upon the life of decedent should be included in the gross estate under section 302 (g) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934.

The provisions of section 302 (g) as so amended are as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

On the estate tax return petitioner did not include any part of the proceeds of the policy in question in the gross estate and took the statutory exemption of $40,000 with respect to other policies of life insurance. In the statement attached to the deficiency notice

respondent determined that the entire proceeds of the policy in question should be included in the gross estate, and based his determination on section 302 (a) as well as on section 302 (g). In his brief respondent apparently seeks to support his determination solely under section 302 (g).

Section 302 (g) appears broad enough on its face to include in the gross estate the amounts receivable by a beneficiary other than the estate under any policy taken out by decedent upon his own life. See *Broderick* v. *Keefe*, 112 Fed. (2d) 293; *Chase National Bank* v. *United States*, 116 Fed. (2d) 625; 52 Harvard Law Review, 1037, 1047. However, the scope of section 302 (g) has been limited by judicial decisions and by regulations to amounts receivable by a beneficiary other than the estate under a policy in which decedent retained a "legal interest" or a "legal incident of ownership" at the time of his death. See *Chase National Bank* v. *United States, supra.* In *Chase National Bank* v. *United States*, 278 U. S. 327, the Supreme Court held that section 402 (f) of the Revenue Act of 1921, which was substantially the same as section 302 (g) of the Revenue Act of 1926, constitutionally applied to amounts receivable by a beneficiary other than the estate under a policy in which at the time of his death decedent retained the right to change the beneficiary and stated that the "power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life  *  *  *  is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death." Article 27 of Regulations 80 (1934 Ed.), which was in effect when decedent revoked the rights reserved by him in paragraph xii, under "Privileges and Conditions", of the policy in question and also when he died, provided that the amounts receivable under a policy of insurance by a beneficiary other than the estate, less the $40,000 exemption, must be included in the gross estate if decedent retained any of the legal incidents of ownership in the policy. See also Art. 27, Regulations 70 (1929 Ed.), and Regulations 80 (1937 Ed.).[1]  Article 25 of Regulations 80 (1934 Ed.)

---

[1] Article 27 of Regulations 80 (1937 Ed.) has been amended recently by T. D. 5032, promulgated January 10, 1941, to provide in part as follows :

"Art. 27. *Insurance receivable by other beneficiaries.*—The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not receivable by or for the benefit of his estate must be included in his gross estate as follows :

"(1) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) after January 10, 1941, the date of Treasury Decision 5032, and

"(2) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date or, in the case of a decedent dying on or before such date, at the time of his death."

stated that "legal incidents of ownership" included the right to the economic benefits of the policy, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, and also contained the following statement: "The decedent possesses a legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent." [2]

Petitioner contends that none of the proceeds of the policy in question are includable in the gross estate. She argues that at the time of his death decedent retained none of the legal incidents of ownership in the policy in question and had only a so-called possibility of reverter or reversionary interest in the policy, and relies on *Emily King Parker et al., Trustees,* 30 B. T. A. 342; affd., 84 Fed. (2d) 838; *Estate of John T. H. Mitchell,* 37 B. T. A. 1; *Thomas C. Boswell et al., Executors,* 37 B. T. A. 970; and *Estate of William G. Thompson,* 41 B. T. A. 901.

The Board has held that section 302 (g) does not apply to amounts receivable by a beneficiary other than the estate under a policy in which at the time of his death decedent had only a so-called possibility of reverter or reversionary interest and did not retain the right to change the beneficiary or to borrow on the policy or to surrender the policy for its cash value. *Emily King Parker et al., Trustees, supra; Guaranty Trust Co. of New York et al., Executors,* 33 B. T. A. 1225; *Estate of John T. H. Mitchell, supra; Thomas C. Boswell et al., Executors, supra;* and see *Estate of William G. Thompson, supra.* All of the above Board cases, with the exception of *Estate of William G. Thompson, supra,* were promulgated prior to *Helvering* v. *Hallock,* 309 U. S. 106, and were decided upon principles enunciated in *Helvering* v. *St. Louis Union Trust Co.,* 296 U. S. 39; *Becker* v. *St. Louis Union Trust Co.,* 296 U. S. 48, and in that part of the opinion in *Bingham* v. *United States,* 296 U. S. 211, which was grounded upon the *St. Louis Union Trust Co.* cases. Although *Estate of William G. Thompson, supra,* was promulgated subsequent to *Helvering* v. *Hallock, supra,* that Board case may be distinguished on the ground that there the policies of insurance were taken out by decedent on his own life *prior to* the enactment of the insurance provisions of the estate tax act. See 52 Harvard Law Review, 1037, 1038–1046.

---

[2] No similar statement was originally contained in either article 25 or article 27 of Regulations 80 (1937 Ed.). Article 27 of Regulations 80 (1937 Ed.) has been amended recently by T. D. 5032, promulgated January 10, 1941, to provide in part as follows: "The insured possesses a legal incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him."

In *Helvering* v. *Hallock, supra,* the *St. Louis Union Trust Co.* cases were overruled. In the *Hallock* case the Supreme Court held that an *inter vivos* transfer by a decedent to a trust under which a remainder interest was subject to defeat by the reversion of the corpus to him "upon a contingency terminable at his death" was an incomplete transfer intended to take effect in possession or enjoyment at or after death and that the value of the remainder interest was includable in the gross estate under section 302 (c) of the Revenue Act of 1926 as amended. With respect to its decision in *Klein* v. *United States,* 283 U. S. 231 the Court stated as follows:

> The inescapable rationale of this decision, rendered by a unanimous Court, was that the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor.

Although the *Klein* and *Hallock* cases deal with section 302 (c), "by parity of reasoning they throw light upon the proper construction of section 302 (g)", *Broderick* v. *Keefe, supra.* In fact, the principles of the *Klein* and *Hallock* cases appear to be equally as "decisive" of the present case as the principles of the *St. Louis Union Trust Co.* cases were "decisive" of *Bingham* v. *United States, supra.* Subsequent to the *Hallock* case, both the Court of Claims and the Circuit Court of Appeals for the Second Circuit have held that section 302 (g) applies to amounts receivable by a beneficiary other than the estate under a policy in which at the time of his death decedent had only a so-called possibility of reverter or reversionary interest. *Bailey* v. *United States,* 31 Fed. Supp. 778; and *Chase National Bank* v. *United States, supra;* cf. *Broderick* v. *Keefe, supra.*

In our opinion, the Board cases referred to above, as well as *Bingham* v. *United States, supra,* in so far as they hold that section 302 (g) does not apply to amounts receivable by a beneficiary other than the estate under a policy in which at the time of his death decedent had only a so-called possibility of reverter or reversionary interest, must fall with the *St. Louis Union Trust Co.* cases.

At the time of his death decedent had a so-called possibility of reverter or reversionary interest in the policy in question. Under the policy his wife was to receive the income from the proceeds for her life and upon her death the proceeds were to be distributed in equal shares to each of their surviving children and to the surviving children of each of their deceased children. In the event that decedent outlived his wife and their children and grandchildren, the proceeds were to be paid to his estate; and in the event that his

wife outlived him and their children and grandchildren, the balance of the proceeds remaining at her death was to be paid to his estate. At the time of his death decedent was 71 years of age, and he was survived by his wife and also by 4 children and 9 grandchildren, whose ages ranged from 6 years to 42 years. It is evident that immediately prior to the time of his death the possibility of defeating the combined interests under the policy of his wife and their children and grandchildren was very remote; and that the possibility of defeating the separate interest under the policy of any single beneficiary was much less remote. However, the degree of remoteness of the possibility of defeating all or any one of the interests under the policy is not determinative here. The *Hallock* case made no distinction between a present and a remote possibility of defeat. Cf. *Doris Bond Sherman*, 41 B. T. A. 898. And under the closely related gift tax statute transfers subject to the possibility of defeat have been held to be incomplete without regard to the degree of remoteness of the possibility. See *Doris Bond Sherman, supra; Marrs McLean*, 41 B. T. A. 1266; *Margaret White Marshall*, 43 B. T. A. 99. The "vital factor" is that each and every interest under the policy was given upon a contingency terminable only at decedent's death. See *Helvering* v. *Hallock, supra*. Thus the "transfer" of the interests under the policy was not complete for estate tax purposes until decedent's death and was "too much akin to testamentary dispositions not to be subjected to the same excise." See *Helvering* v. *Hallock, supra*. Therefore, it is held that section 302 (g) applies to the policy in question. *Bailey* v. *United States, supra; Chase National Bank* v. *United States, supra;* and see *Klein* v. *United States, supra; Helvering* v. *Hallock, supra; Broderick* v. *Keefe, supra*.

Petitioner contends that, even if section 302 (g) is applicable to the policy in question, only such portion of the proceeds of the policy as is allocable to the premiums paid by decedent is includible in the gross estate. She relies on *Lang* v. *Commissioner*, 304 U. S. 264; and *DeLappe* v. *Commissioner*, 113 Fed. (2d) 48.

The courts have held that a policy of insurance in which a beneficiary other than the estate is named is "taken out" by a decedent on his own life within the meaning of section 302 (g) to the extent that the premiums have been paid directly or indirectly by decedent, and that only such portion of the proceeds as is allocable to the premiums so paid by the decedent is includable in the gross estate. *Walker* v. *United States*, 83 Fed. (2d) 103; *Helvering* v. *Reybine*, 83 Fed. (2d) 215; *Old Colony Trust Co., Executor*, 39 B. T. A. 871; see *Lang* v. *Commissioner, supra; DeLappe* v. *Commissioner, supra; Nelson* v. *Commissioner*, 101 Fed. (2d) 568; cf. *Bailey* v. *United*

*States, supra.* In *Lang* v. *Commissioner, supra,* the Supreme Court made the following significant statement: "In the absence of a clear declaration it cannot be assumed that Congress intended insurance bought and paid for with the funds of another than the insured and not payable to the latter's estate, should be reckoned as a part of such estate for purposes of taxation." And in *DeLappe* v. *Commissioner, supra,* the Circuit Court of Appeals for the Fifth Circuit stated in part as follows: "In computing estate taxes on the proceeds of life insurance the question to be decided is whether the decedent paid all or only part of the premiums."

Prior to the promulgation of Regulations 80 (1934 Ed.) the regulations consistently and continuously recognized that whether or not a policy of insurance in which a beneficiary other than the estate was named was "taken out" by decedent on his own life within the meaning of the statute depended in large part upon the source of premium payments.[3] See *Lang* v. *Commissioner, supra; Walker* v. *United States, supra.* Article 25 of Regulations 70 (1929 Ed.) provided in part as follows: "Where a portion of the premiums were paid by the beneficiary and the remaining portion by the decedent the insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid"; and article 28 of Regulations 70 (1929 Ed.) provided in part that, where the proceeds of a policy were payable to a beneficiary other than the estate and only a portion of the premiums had been paid by the decedent, then the amount to be returned was that proportion of the insurance receivable which the premiums paid by the decedent bore to the total premiums paid. In *Lang* v. *Commissioner, supra,* the Supreme Court held that the definition of the words "taken out" as used in the statute which was given in articles 25 and 28 of Regulations 70 "must be treated as approved by Congress." Articles 25 and 27 of Regulations 80 (1934 and 1937 editions) as originally promulgated, apparently required that the entire amounts receivable under a policy of insurance by a beneficiary other than the estate, less the $40,000 exemption, be included in the gross estate, regardless of source of premium payments, if at the time of his death decedent retained any of the "legal incidents of ownership" in the policy. See *Walker* v. *United States, supra.* However, some recognition of the importance of the source of premium payments was given in article 25 of the 1934 edition by the provision that insurance "is considered to be taken out by the decedent in all cases, whether or not he makes the application, if he pays the premiums either directly or indirectly", and in article 25

---

[3] Regulations 37, art. 32; Regulations 63, art. 27; Regulations 68, arts. 25 and 28; Regulations 70, arts. 25 and 28.

of the 1937 edition by the provision that in the case of a decedent dying before the date on which the 1934 edition of Regulations 80 was promulgated the definition of "taken out" set forth in article 25 of Regulations 70 (1929 Ed.) was to continue to apply. Articles 25 and 27 of Regulations 80 (1937 Ed.) have been amended recently by T. D. 5032, promulgated January 10, 1941, to provide once more that whether or not a policy in which a beneficiary other than the estate is named is "taken out" by decedent on his own life within the meaning of the statute depends in large part upon the source of premium payments. Article 25 as so amended provides in part as follows: "Where a portion of the premiums or other consideration was actually paid by another and the remaining portion by the decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the proportion that the payments therefor made by him bear to the total amount paid for the insurance"; and article 27 as so amended provides in substance that the proceeds of a policy receivable by a beneficiary other than the estate, less the $40,000 exemption, are to be included in the gross estate only to "the extent to which such insurance was taken out by the decedent upon his own life (see article 25)."

In the light of the judicial and administrative construction of section 302 (g) outlined above, we are unable to agree with the Court of Claims that it is of "no controlling importance" whether or not the premiums on a policy in which a beneficiary other than the estate is named are paid by the decedent or another. See *Bailey* v. *United States, supra.*

Decedent paid premiums on the policy in question amounting to $4,557.50, and his wife paid premiums on the policy amounting to $27,708.37. She paid such premiums out of her own funds. It is true that her separate estate consisted of property which decedent had given to her at various times during their marriage. However, in our opinion, this fact alone does not justify the attributing to decedent of the premium payments made by his wife. Cf. *Nelson* v. *Commissioner, supra.* Therefore, it is held that only 4,557.50/32,265.87 of the proceeds of the policy in question is includable in the gross estate. *Walker* v. *United States, supra; Helvering* v. *Reybine, supra; Old Colony Trust Co., Executor, supra;* see *Lang* v. *Commissioner, supra; DeLappe* v. *Commissioner, supra.*

In her petition, petitioner claims a deduction of $1,100 as counsel fees and expenses incurred in connection with the present proceeding. The deduction in question has not been allowed by respondent. The parties stipulated that petitioner has agreed to pay and will pay her counsel $1,100 "in full for his fee and expenses in connection with the prosecution of this appeal."

Section 303 (a) (1) (B) of the Revenue Act of 1926 as amended provides for the deduction from the value of the gross estate of such amounts for "administration expenses * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered." "There can be no question that such a proceeding as this is an incident to the administration of the estate" and that counsel fees and expenses incurred therein are "administration expenses" within the meaning of the statute. *John A. Loetscher et al., Executors*, 14 B. T. A. 228; reversed on another issue, 46 Fed. (2d) 835. The statute does not require that "the court having jurisdiction shall first make the allowance." *John A. Loetscher et al., Executors, supra.* In Tennessee the executors are allowed their reasonable expenses of administration, including counsel fees and expenses. See Code of Tennessee, sec. 8250; *Cannon v. Apperson*, 82 Tenn. 553; *Johnson v. Patterson*, 81 Tenn. 626. The counsel fees and expenses in question have been agreed upon and appear reasonable. Cf. *Estate of Jacob Voelbel*, 7 B. T. A. 276. "This proceeding was prosecuted in good faith and apparently with reasonable cause and there is no reason to doubt" that the executor is entitled in her accounting to the allowance of the counsel fees and expenses in question. Cf. *John A. Loetscher et al., Executors, supra.* The statute does not require that the counsel fees and expenses in question actually be paid; it is sufficient that the amount of the counsel fees and expenses have been agreed upon and will be paid. *William Rhinelander Stewart, Jr., et al., Executors*, 31 B. T. A. 201. Therefore, it is held that the $1,100 claimed as a deduction for counsel fees and expenses incurred in conection with the present proceeding should be allowed. *Margaret Day et al., Executors*, 34 B. T. A. 11; *William Rhinelander Stewart, Jr., et al., Executors, supra; Estate of Jacob Voelbel, supra; John A. Loetscher et al., Executors, supra;* and see Regulations 80, art. 34.

On the estate tax return petitioner reported the value of 52 shares of Cain-Sloan Co. stock as of the date of death of the decedent at $1,700 per share, or a total of $88,400. In the statement attached to the deficiency notice respondent determined that the value of such stock as of the date of death of the decedent was $2,000 per share, or a total of $104,000. The parties stipulated that the value of such stock as of the date of the death of the decedent was $1,875 per share, or a total of $97,500. Effect will be given to this stipulation upon computation of the deficiency under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*