Estate of Samuel A. Lynde, Cornelius Lynde, George P. Lynde and Isabel Lynde Dammann, Executors v. Commissioner.
Estate of Lynde v. Commissioner
Docket No. 543.
United States Tax Court
1944 Tax Ct. Memo LEXIS 347; 3 T.C.M. (CCH) 210; T.C.M. (RIA) 44069; February 29, 1944
*347 Held, that the entire proceeds of a certain insurance policy in which decedent retained the right to borrow on the policy or to cash the same in the event insured survived the beneficiary, are includible in the taxable estate. John C. Lobb, Esq., for the petitioners. Lester M. Ponder, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in estate tax liability in the amount of $1,953.60, consequent chiefly on his holding that the amount of $12,706.13, constituting the amount receivable as insurance under a life insurance policy taken out by the decedent upon his own life and representing the value of the policy on the applicable valuation date, was includible in the decedent's gross estate under the provisions of section 811 (c), (d) and (g), Internal Revenue Code, and the applicable Regulations thereunder. Findings of Fact The facts were stipulated substantially as follows: On May 31, 1901, Samuel A. Lynde took out a life insurance policy on his own life with The Northwestern Mutual Life Insurance Company, Policy No. 485,481, in the face amount of $12,500. At this time he was 46 years of age. No beneficiary *348 was named in the policy at that date. On May 10, 1906, Samuel A. Lynde designated in writing his wife, Nannie P. Lynde, to be his beneficiary under the policy if she should survive him. On March 3, 1937, an endorsement was executed by the decedent and became effective on the policy, providing as follows: "The insured waives the right to change or revoke the designation of Nannie P. Lynde, his wife, as beneficiary. Cornelius and George L. Lynde and Isabel L. Dammann, children, are designated as contingent beneficiaries, share and share alike, the survivors or survivor. It is hereby expressly agreed that the right is reserved to the insured to obtain loans from the Company upon security of this policy or to surrender the same for its cash value without the consent or participation of any contingent beneficiary. The rights of the contingent beneficiaries shall be subject and subordinate to any outstanding indebtedness on account of this policy in favor of the Insurance Company." At the time of the execution of the endorsement, the decedent was in good health for a man of his years. On or about January 19, 1937, the decedent received a letter from his counsel, J. F. Dammann, advising *349 the endorsement referred to above. The letter was received by the decedent in the due course of mails, and upon receipt thereof, decedent executed the endorsement in question and returned it to his attorney with a letter dated January 29, 1937. The letter of January 19, 1937, contained the following: "The sum total of insurance is $51,563; hence, there are two objectives in these endorsements. One is to eliminate the danger of having the policies payable to your estate in any event, and the other to eliminate from all insurance over $40,000 (the federal state tax limit) any interest which you might have so that the excess would not be taxable. "As to the first proposition, you will find attached endorsements for the three ConnecticutMutual policies, the two Northwestern Mutual policies, the Mutual Benefit policy and the John Hancock policy. I have not included the Bankers Life Insurance policy which has a paid up value of $1673, as it is payable to Nannie P. Lynde or Isabel Lynde Dammann. The letter which you contemplate writing to the beneficiaries as to the special use to be made of the proceeds of the policy can cover this policy as it is without the necessity of any change, *350 unless you think it better to have them all alike. If so, I can easily secure the necessary endorsements. "As to the second objective, if you eliminate any interest you may have in changing the beneficiary, etc., in the Northwestern Mutual policy, No. 485481 for $12,500, you will reduce the insurance in which you have any interest below the $40,000. Hence, you will find attached to the Northwestern endorsement a third blank accomplishing this purpose. If you will sign all of these, I will attach those copies which must be attached to the policies and forward the others to the companies, and will then hold the policies until your return. I am enclosing an envelope for your use in mailing them back." No further endorsement or change of any nature was made with respect to the policy after the endorsement of March 3, 1937. The decedent left his home in failing health early in January 1940 and went to Arizona, where he died on February 22, 1940. He executed his Last Will and Testament on February 7, 1940, and from that date on, engaged in no business affairs of any nature, and was extremely ill the last ten days of his life. From May 31, 1901 until the time of his death, February *351 22, 1940, the decedent paid all of the premiums on the policy and no premiums were ever paid at any time on the policy except by the decedent. The policy was in full force and effect from May 31, 1901 until the date of death of Samuel A. Lynde, February 22, 1940. The amount receivable by the beneficiary under the policy was $12,706.13, consisting of the face amount of the policy, $12,500, and accrued dividends of $206.13. The cash surrender value of the policy on March 3, 1937, was $9,446.25. The insurance policy matured with the death of Samuel A. Lynde, which occurred on February 22, 1940. The Commissioner determined that the amount of $12,706.13 constituted the amount receivable as insurance under the policy, and that the amount also represented the value of the policy on the applicable valuation date, and included in the decedent's gross estate the amount of $12,706.13. No gift tax return was filed by the decedent during his lifetime with respect to the assignment on March 3, 1937. On March 16, 1942 a delinquent gift tax return for the year 1937 was filed in the name of "Samuel A. Lynde, deceased" as donor, and executed by "Cornelius Lynde, Executor" with the collector of internal *352 revenue for the first district of Illinois, in which return the amount of $12,500, the face amount of the policy, was included. This delinquent return was filed after the receipt by the executors of the estate of Samuel A. Lynde of a letter dated November 1, 1941, from the internal revenue agent in charge, Chicago, Illinois, setting forth that a deficiency in estate tax was proposed against the estate by reason of the inclusion in the estate of the amount receivable by the beneficiary under the insurance policy. In view of the allowable deductions under the gift tax statute, no gift tax was computed to be due on account of the assignment. Opinion VAN FOSSAN, Judge: The petitioners advance two propositions. First, that the decedent retained no taxable interest in the proceeds of the life insurance policy in question, contending in support that Helvering v. Hallock, 309 U.S. 106, does not apply and that Helvering v. St. Louis Union Trust Co., 296 U.S. 39, and Bingham v. United States, 296 U.S. 211, lay down the correct guiding principles. Petitioners' second contention is, in the alternative, *353 that the Commissioner has improperly valued the includible interest. We find no merit in the petitioners' first position. The Hallock decision is the law of the case. Assuming petitioners' theory that the law was in a state of flux, it is noted that the Hallock case was decided January 29, 1940. Decedent died February 22, 1940. The fact that during the intervening period decedent was ill and was perhaps incapable of conforming his business affairs to the Hallock decision cannot control. Parenthetically, it is noted that during this period decedent made his last will. This argument, however, is beside the point. When the Hallock decision was announced it swept aside the St. Louis cases and reestablished the doctrine of Klein v. United States, 283 U.S. 231, as the prevailing law, improperly departed from for a short time. That the Bingham case, which leaned on the St. Louis cases for support, fell with those cases was held by this Court in the Estate of John E. Cain, 43 B.T.A. 1133, and by the Circuit Court of Appeals for the First Circuit in Bodell v. Commissioner, 138 Fed. (2d) 553. *354 The law is clear that the retention by the decedent of valuable rights such as are here involved, i.e., the power to borrow on the policy or to cash the same, possibly, in any event, but certainly if the insured survives the named beneficiary, renders the proceeds of the policy includible as a part of the gross estate. Although the compelling logic of the Hallock case was addressed to a situation involving trust property, the decision has been held to control insurance cases equally. Bodell v. Commissioner, supra. (CCA-1); Commissioner v. Washer, 127 Fed. (2d) 446, (CCA-6); and Chase National Bank v. United States, 116 Fed. (2d) 625 (CCA-2). The above ruling disposes of petitioners' alternative suggestion that the property to be included in the gross estate is limited to the difference between the face of the policy and the cash surrender value. This question was squarely ruled by the Court of Appeals for the Sixth Circuit in Commissioner v. Washer, supra. The Commissioner correctly included the total proceeds of the policy. Decision will be entered *355 for the respondent.