Paul Bakewell, Jr., and St. Louis Union Trust Company, as Trustees of the Estate of Edward H. Simmons, deceased, Transferees v. Commissioner. Dorothy Simmons Hock, Beneficiary and Transferee v. Commissioner.
Bakewell v. Commissioner
Docket Nos. 774 and 1858.
United States Tax Court
1944 Tax Ct. Memo LEXIS 282; 3 T.C.M. (CCH) 388; T.C.M. (RIA) 44124; April 21, 1944
*282 J. E. Cramer, Jr., Esq., for the petitioner. J. E. Marshall, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion These cases were consolidated for hearing. In both the deficiencies have been determined against the petitioners as transferees of assets of the Estate of Edward H. Simmons, deceased; in No. 774, against testamentary trustees of the estate; and in No. 1858 against the decedent's daughter who was the beneficiary of the insurance policy in question. The Commissioner has determined a deficiency in the estate tax of Edward H. Simmons, deceased, of $1,076.54. The petitioners contend that there is no deficiency in estate tax due from the transferor estate. The only question is whether respondent erred in including in decedent's gross estate the proceeds of an insurance policy written upon decedent's life in which decedent's daughter was irrevocably named as a beneficiary, but in which, so respondent has determined, the decedent had a reversionary interest at the time of his death. The facts are stipulated and are in substance as follows: Findings of Fact Edward H. Simmons died testate October 16. 1937, a resident of St. Louis County, Missouri; and letters *283 testamentary and of administration were granted by the Probate Court of the county to St. Louis Union Trust Company, as executor, and to Paul Bakewell, Jr., as administrator c.t.a. Pursuant to the terms of decedent's will, a trust was established; and St. LouisUnion Trust Company and Paul Bakewell, Jr., were the trustees. Put in evidence were photostatic copies of policy No. 389847 of the Phoenix Mutual Life Insurrance Company, dated October 11, 1920, which was issued on the life of Edward H. Simmons, and of the application upon which it was issued. Both are incorporated by reference and the pertinent parts set out below. Dorothy L. Simmons, named on the face of the policy, was the only child of the insured, who became by marriage Dorothy Hock and survived him. She received the proceeds of the policy in the amount of $19,972.53. Decedent's Testamentary Trustees and his daughter, Dorothy, are as Transferees the petitioners in this proceeding. In the application for the insurance policy, the decedent, the insured, answered "No" to the question, "Is the right to change the Beneficiary desired?" It also contains the following: "Note: If the right to change the beneficiary is reserved, *284 the insured retains full control of the policy, and for that reason creditors may have a claim thereon prior to that of any beneficiary nominated. If the right to change the beneficiary is not reserved to the insured, all beneficiaries named in the policy must join in any release of the same, and while the insured or any beneficiary or assignee is a minor no loan can be made by the company (except for the purpose of paying current premiums and interest), and a cash value will require a release from the duly appointed legal guardian of any minor. Endowments will be made payable to the insured on maturity, and in all policies insurance benefits will revert to surviving beneficiaries or the insured upon the death of the designated beneficiary." The policy contained the following provision in relation to beneficiaries "Beneficiary Clauses. (a) Unless otherwise specifically provided herein, upon the death of any beneficiary hereunder during the lifetime of the insured, any interest of such beneficiary shall revert to any surviving beneficiaries (in equal shares) then named hereunder, but if there be none to the insured or assigns." Endorsed on it by proper officers of the company was *285 the following: "Beneficiary Clause. At the request of the insured in the application herefor the beneficiary provisions of paragraphs b and c, Section 9 hereof, are hereby made inoperative and the beneficiary hereunder is made irrevocable. The insured reserves the right to make premium loans, to change the method of applying any dividends and to change the mode of paying premiums, but during the lifetime of the beneficiary no other change may be made in the policy or value allowed without the consent of such beneficiary." Paragraph 18 of the policy provides that on request of the insured, premiums or interest payments falling due after two years shall be paid by the company until the debt equals the cash value of the policy. The parties have stipulated that if the decedent and insured, Edward H. Simmons, had only a "possibility of reverter" or a reversionary interest under the policy, the value of such an interest at the date of his death on October 16, 1937 would have been $834.56. Respondent increased the value of decedent's gross estate by including therein $14,816.70 (which is that part of the $19.972.53 proceeds of the policy, which, with the proceeds of other insurance on *286 the life of the decedent, exceeds the $40,000 statutory insurance exemption); and because of this inclusion and others which are not in question in this proceeding, determined a deficiency of $1,076.54 in estate tax due by decedent's estate, no part of which has been paid. As a result of distributions of its assets, the estate became insolvent and without assets with which to satisfy the estate tax deficiency and interest. In the distribution of the assets, each of the petitioners received assets of a value far in excess of $1,076.54 plus statutory interest. The estate tax return of Edward H. Simmons, deceased, was filed with the collector for the first district of Missouri. Payments of estate tax were made by the executors as follows: December 21, 1938
$ 2,500.00
January 13, 1939
16,252.29
August 23, 1939
2,469.44
A refund claim was filed May 15, 1942 by the executors and is incorporated here by reference. Opinion KERN, Judge: The primary question is whether all or a part of the proceeds of an insurance policy written on the life of decedent, Edward H. Simmons, who died in 1937, are includible in his gross estate, under section 302 (g), Revenue Act of 1926, as amended *287 by section 404, Revenue Act of 1934. [1] In solving this question it is necessary to decide (1) whether decedent retained such a possibility of reverter as to constitute an incident of ownership with regard to the policy which would make the proceeds taxable to his estate, see Estate of John E. Cain, Sr., 43 B.T.A. 1133, 1136; and (2), if we decide that he had such a possibility of reverter, whether the entire proceeds of the policy or only the value of his reversionary interest is to be added to the other insurance and section 302 (g) applied. Since the proceeding is brought against transferees a secondary question is raised of their liability as such. In No. 774 in which Paul Bakewell, Jr. and St. Louis Union Trust Co. testamentary trustees of decedent are petitioners, the respondent alleged facts in his amended answer sufficient to sustain *288 their liability as transferees, and these not being denied, we granted respondent's motion that the allegations be deemed admitted. In No. 1858, in which Dorothy Hock, beneficiary of the insurance policy in question, is petitioner, the facts show that she received insurance proceeds in excess of her transferee liability; so that the liability of both petitioners seems sufficiently clear should we uphold the respondent's contention on the primary issue. This contention rests primarily on section 9 (a) of the life insurance policy, quoted in our findings, which provides that if the beneficiary shall die during the insured's lifetime, the proceeds in the absence of alternative beneficiaries, shall be paid to the insured; and on the endorsed "Beneficiary Clause" by which, although the nomination of the beneficiary is thereby made irrevocable, the insured reserves the right to make "premium loans", to change the method of applying dividends and the mode of paying premiums. We do not find "premium loans" anywhere defined in the policy, but we are led to infer from the provision on "premium loans", which we have quoted in our findings, that it means nothing more than the right to have the *289 company apply reserves created by the payment of prior premiums to the satisfaction of current premiums remaining unpaid, so as to prevent the lapsing of the policy. If such is the case - and respondent has not shown us otherwise - the insured cannot be said to have reserved any substantial right except that of reversion on the death of the primary beneficiary, his daughter. The Treasury Regulations 80 (1934 edition), [2] include as "legal incidents of ownership in the policy" the situation here where "the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent." Decedent here died in 1938 while these Regulations were in force (but modified by T.D. 4729, discussed later), and the policy was issued in 1920, after the insurance provisions of the statute came into force. *290 1. We shall consider first the question of the reversionary interest, if any, retained by the decedent. The value of it has been stipulated as $834.56. Respondent seeks to include, however, the full value of the policy proceeds above the statutory exemption. Petitioner contends that there is a conflict between the printed provision on beneficiaries in the policy, section 9, which says that any interest of a beneficiary who dies shall revert to a surviving beneficiary, but "if there be none [i. e., surviving beneficiaries] to the insured or assigns"; and the endorsed provisions as to beneficiaries, which allows the reservation of the right to make "premium loans" and to change the method of applying dividends and says that "during the lifetime of the beneficiary no other change may be made in the policy or value allowed without the consent of such beneficiary". We find nothing inconsistent in these two provisions, for section 9 provides only for the contingency of prior death of the irrevocable beneficiary, whereas the "beneficiary clause" expressly restricts its effect to "the lifetime of the beneficiary". The Missouri cases cited in support of the doctrine that an irrevocable beneficiary's *291 interest is vested and descends to his next of kin, U.S. Casualty Co. v. Kacer, 160 Mo. 301; Diehm v. Insurance Co., 129 Mo. App. 256; do not support so broad a proposition, for the former deals with the situation where there is no qualification on the beneficiary's interest, such as appears here; and the latter says the proposition of descent holds "unless there are words of restriction in the policy" (at p. 262). The limitation here is express and can not be avoided by construction. The petitioner's next contention is that at the time of decedent's death, on October 16, 1937, the Treasury Regulations did not require the inclusion in the gross estate of proceeds of life insurance policies where only a reversion on condition was retained, and hence that such ns interest is not includible here. Article 25 of Regulations 80, in force before decedent's death, provided that such a conditional reversion constituted a "legal incident of ownership". On March 18, 1937, this provision was struck out by T.D. 4729 (C.B. 937-1, page 284, 288), in order to conform with the Supreme Court's decision *292 in Bingham v. United States, 296 U.S. 211; which adopted as to insurance proceeds the principle already laid down in Helvering v. St. Louis Union Trust Co., 296 U.S. 39; that a condition reversion did not constitute an interest passing at death. It happened, therefore, that when petitioner died, the statute was so construed that his conditional reversion would not have been includible. Then came in 1940 the Supreme Court's decision in Helvering v. Hallock, 309 U.S. 106; which overruled the principle of the St. Louis Union Trust Co. case supra, as not being consonant with the court's earlier decision in Klein v. United States, 283 U.S. 231; and held as to the three trusts then before it that the reversion to the settlor on condition of his survival of his children brought the trusts within the tax. Thereupon the Commissioner amended his Regulations 105, article 81.27, by holding once again such a reversionary interest as taxable. Congress in the Revenue Act of 1942, section 404 (a), provided that "the term 'incident of ownership' does not include *293 a reversionary interest", but by subsection (c) of the same section limited application of the amendments to estates of decedents "dying after the date of the enactment of this Act", which was October 21, 1942. It follows, therefore, that Congress intended that reversionary interests be included in the gross estate, and it is no answer to say, as petitioner does, that the elimination of such interest from "incidents of ownership" by Congress in 1942 indicates any contrary intention, for the Supreme Court has held otherwise as to the earlier provision; and Congress has not gainsaid the court by making its amended provision retroactive. The fact that we should have had to adopt a contrary view under existing authority, had the case arisen in any year from decedent's death in 1937 to 1940, can not alter our position now. Estate of John E. Cain, Sr., supra;Estate of Frederick Bodell, 47 B.T.A. 62, affirmed 138 Fed. (2d) 553. It is unnecessary, therefore, to consider respondent's argument that the decedent's retained right to dispose of dividends or to allow the policy's accumulated value to be used *294 for the payment of premiums constitutes an incident of ownership. One point remains, the amount of the life insurance proceeds includible in decedent's gross estate because of his reversionary interest. The actuarial value of his expectancy has been stipulated. We do not think that this alone is includible in his gross estate. To the contrary we conclude that respondent did not err in including the full amount of the proceeds above the $40,000 statutory credit. Estate of Lester Field, 2 T.C. 21; Estate of Frederick Bodell, supra;Estate of John E. Cain, Sr., supra.
Decision will be entered for respondent. Footnotes
1. SEC. 302(g) To the extent of the amount receivable by the executor as insurance under policies take out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.↩
2. ART. 25. Taxable insurance - The statute provides for the inclusion in the gross estate of insurance taken out by the decedent upon his own life, as follows: (a) All insurance receivable by, or for the benefit of, the estate; (b) all other insurance to the extent that it exceeds in the aggregate $40,000. * * * Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The decedent possesses a legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent. ART. 27. Insurance receivable by other beneficiaries. - The statute requires the inclusion in the gross estate of the decedent of the proceeds of any policy, or the aggregate proceeds of all policies, not receivable by or for the benefit of decedent's estate, to the extent that such proceeds exceed $40,000, regardless of when the policy was or the policies were issued, if the decedent possessed at the time of his death any of the legal incident of ownership.↩