843 A.2d 1190

PATRICIA KONCZYK, PLAINTIFF, v. JEROME
KONCZYK, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Burlington County

Decided April 17, 2003.

*Robert P. Weishoff,* for Ms. Konczyk.

*Dianne L. Robbins,* Executrix, *Pro Se,* for the Estate of Jerome J. Konczyk.

SUTER, J.S.C.

The question raised by this post-judgment motion is whether plaintiff Patricia Konczyk, the decedent's ex-wife ("plaintiff" here-

in), is entitled to receive $15,000 in life insurance proceeds when under the Final Judgment of Divorce, only $2,000 in alimony remained to be paid to her at the time of the decedent's death. This appears to be a question of first impression in this State.

Plaintiff's post-judgment motion seeks $15,000 in life insurance benefits and requests a lien in this amount against the proceeds of any life insurance policies or against any property of the decedent's estate. Plaintiff also seeks $5,000 from the estate for a savings passbook account in this amount, which she claims was opened by the defendant for her. Plaintiff requests attorney's fees and costs for filing this motion.

The executrices of the estate entered an appearance herein, although neither lives in New Jersey. They request that plaintiff's motion be denied or that plaintiff provide proof of the life insurance policy. They also seek costs for this motion. They appeared *pro se*.

### 1. *The Insurance Issue*

The parties were divorced by Final Judgment of Divorce filed on April 8, 1996. The actual settlement was placed on the record before the Court on February 20, 1996. This Court has determined that the recording of the proceeding has been destroyed. Both parties were represented by counsel. The Final Judgment of Divorce addressed certain real property owned by the couple, allowed plaintiff to retain $44,000 "she took at the time of the separation", allowed the defendant to retain one hundred percent (100%) of the "Harris 401K", addressed household possessions and cars and provided that forty percent (40%) of defendant's pension was to go to the plaintiff and forty percent (40%) of the plaintiff's pension was to go to the defendant. This division was to be made by a qualified domestic relations order.

Of relevance here, the defendant was to pay alimony directly to plaintiff as follows:

$200 per month for five years, upon the signing of the Final Judgment of Divorce, and thereafter, $100 per month until such time as the plaintiff reaches the age of 65

years. In the event the plaintiff remarries, defendant's obligation as to alimony shall cease. [Final Judgment of Divorce, paragraph F].

The Final Judgment further provided:

The plaintiff shall retain the life insurance policies in her possession and defendant hereby waives his interest in same. Defendant agrees that within ninety days from the signing of the Final Judgment of Divorce, he shall produce proof of $20,000 worth of life insurance, or its equivalent, for the plaintiff's benefit to remain in effect until the defendant's death. When defendant's obligation to pay alimony decreases to $100 per month, after five years from the date of this Judgment, defendant's alimony protection shall be reduced to $15,000 in life insurance. In the event that the defendant's obligation as to alimony ceases, the defendant's obligation to produce said proof of life insurance or its equivalent shall also cease. [Final Judgment of Divorce, paragraph H].

The defendant passed away on December 5, 2002. The plaintiff certified that upon the defendant's death, she contacted Metropolitan Life Insurance Company regarding the insurance and was advised that the couple's two children, Shirley Konczyk and Dianna Robbins, had been named as beneficiaries—rather than the plaintiff. Plaintiff asserts that this change was made January 3, 2001. Plaintiff determined this when she made a claim for the death benefits. This was the first she was aware that her daughters were named as the beneficiaries, rather than her.

When the post-judgment motion was originally filed, plaintiff failed to provide the Court with information regarding her age, marital status or the amount of alimony owed. This information was supplied after oral argument. Plaintiff contends she received alimony through December 2002, but beginning January 2003, no alimony payments have been made. She has not remarried and currently is 63. She will turn 65 on August 13, 2004. Thus, if the defendant were alive, she would continue to receive alimony through August 2004. The Court calculates that this would amount to $2,000 more in alimony payments.

Plaintiff did not produce a copy of any insurance policies in connection with this motion. At oral argument, the Court learned that there is more than one policy, the combination of which may equal or exceed $15,000. We do not know the type of policy (term life, whole life, etc.), whether there were loans against the policies or why the beneficiary was changed. At the time of oral argu-

ment, the policies had not been paid because there is an issue regarding defendant's cause of death.

Plaintiff's annual income is $33,000. Her legal fees and costs for this motion are $930.

Plaintiff contends she is entitled to $15,000 because this is the amount of the insurance set forth in the Final Judgment of Divorce for plaintiff's benefit. Plaintiff's counsel, who represented her when the Final Judgment of Divorce was entered, asserted at oral argument that the face amount of the insurance was already reduced from $20,000 to $15,000 by the Final Judgment, and there was no intent to reduce it to equal the amount of alimony actually owed. If this were the case, he argued, then the insurance policy would have continued to reduce as the alimony amount became less. Plaintiff's attorney contends that the $15,000 policy was part of the bargained for exchange in the divorce settlement. As noted, the tape of the settlement before Judge Schlesinger no longer exists.

Shirley Konczyk and Dianna Robbins are the executrices of defendant's estate. Although the estate is not a party here (plaintiff filed this action against defendant), they both personally appeared March 7, 2003 for oral argument. As such, they submitted to the jurisdiction of this Court. See *R.* 4:4-6. They could not tell the Court why their father had changed beneficiaries on the life insurance. He had not discussed this with them, nor had he discussed with them whether the full amount of the policy was to be paid to plaintiff. The proceeds have not yet been paid out due to the issue regarding defendant's cause of death, according to the executrices. The executrix, Ms. Robbins, certified she has not had any relationship with her mother (plaintiff) since 1982. Ms. Robbins contends that the plaintiff has harassed both she and her sister, Shirley, for money and personal effects since the passing of the defendant.

The estate contended plaintiff has not shown proof that she was the beneficiary under the policy, or that she was made the beneficiary within ninety (90) days as required by the Final

Judgment of Divorce. The executrices are not sure what was intended by the Final Judgment of Divorce. They are not represented herein. They believe the Final Judgment of Divorce could also have meant that plaintiff receive insurance just in the amount of alimony due her *i.e.,* $2,000.

## 2. *Passbook Account*

Also at issue in this post-judgment motion is a $5,000 passbook account. The Final Judgment of Divorce does not provide for a $5,000 passbook account. Nevertheless, plaintiff contends the defendant opened such an account for her at Provident Savings Bank three days after the divorce was granted. The defendant deposited $5,000 in that account labeled "Jerome J. Konczyk P.O.D. Patricia J. Konczyk". The plaintiff says "P.O.D." means "payable upon death." The plaintiff has learned the account no longer exists. The executrices notified plaintiff in writing the account no longer exists. It was closed by the defendant on September 19, 1996. The executrices advised the Court that they had no responsibility for the closing; rather, the defendant chose to close this account on his own. Because the defendant closed this account prior to his death and had not given control of the account to plaintiff, they contend that the plaintiff does not have a legally enforceable claim to the funds from the estate.

## 1. *Insurance Proceeds*

Alimony is an allowance for support and maintenance when spouses are living separate and apart or are divorced. *Davis v. Davis,* 184 *N.J.Super.* 430, 446 *A.*2d 540 (App.Div.1982). Our Legislature has addressed alimony at *N.J.S.A.* 2A:34–23 *et seq.* Since September 1999, there are four different types of alimony including traditional alimony referred to as "permanent", as well as "limited duration, rehabilitative or reimbursement" alimony. See L. 1999, C. 199 § 1. This Final Judgment of Divorce was entered before the statutory change allowing for limited duration alimony. Nonetheless, the parties agreed to a limited

period during which alimony would be paid. Here, alimony was to terminate when plaintiff became 65. The Court may require "reasonable security" for alimony. *N.J.S.A.* 2A:34–23.

Historically, and under the common law, alimony stopped when the obligor died because alimony is personal to the paying spouse. *Jacobitti v. Jacobitti,* 135 *N.J.* 571, 573, 641 *A.*2d 535, 536 (1994). Thus, courts would not enforce "post mortem" alimony. Over the years, that principal has been eroded somewhat as courts have looked to the provision of life insurance or trusts to provide financial security to spouses or children after the death of the paying spouse. See *Meerwarth v. Meerwarth,* 71 *N.J.* 541, 366 *A.*2d 979 (1976); *Davis, supra.,* 184 *N.J.Super.* at 430, 446 *A.*2d at 540. Our statutes continue to recognize the principle that alimony terminates at death.

> Alimony shall terminate upon the death of the payer spouse, except that any arrearages that have accrued prior to the date of the payer spouse's death shall not be vacated or annulled. [*N.J.S.A.* 2A:34–25].

However, the statute now further provides that,

> [n]othing in this Act shall be construed to prohibit a court from ordering either spouse to maintain life insurance for the protection of the former spouse or the children of the marriage in the event of the payer spouse's death. [*Id.*].

Because life insurance is only payable after the death of the insured and generally passes outside the insured's estate to the beneficiary of the policy, this protection for a surviving spouse or child arguably could constitute post mortem alimony. However, the issue of whether life insurance can be used as security for alimony or child support payments has long been put to rest in New Jersey. See *N.J.S.A.* 2A:34–25; *Meerwarth, supra.,* 71 *N.J.* at 541, 366 *A.*2d at 979 (husband required to obtain life insurance for protection of former wife and children); *Davis, supra.,* 184 *N.J.Super.* at 430, 446 *A.*2d 540 (husband required to provide life insurance as security for wife's alimony in the event husband predeceases wife); *Hirko v. Hirko,* 166 *N.J.Super.* 111, 398 *A.*2d 1353 (Ch.Div.1979) (court allows levy on cash value of life insurance to satisfy judgment for alimony arrears); *Grotsky v. Grotsky,* 58 *N.J.* 354, 277 *A.*2d 535 (1971) (insurance to secure child

support); see 11 *N.J.P.A.R.* at § 33.3 ("Security for Support Obligations").

Our courts have addressed certain factual scenarios where an ex-spouse, who is obligated to pay alimony or child support, was required to provide insurance as a security, died, and the proceeds of the life insurance are looked to to provide continued payments. In *Maquiling v. Maquiling*, 211 *N.J.Super.* 69, 510 *A.*2d 717 (Law Div.1986), the paying spouse was obligated to maintain $200,000 in life insurance; $100,000 was for the benefit of his ex-spouse and $100,000 was for the children until emancipated. Although that opinion does not mention the amount of the permanent alimony payments, they were to continue until plaintiff's death or remarriage. The paying spouse then died. At the time of his death, he had a $50,000 insurance policy. The court held that his ex-spouse was entitled to $50,000 from the decedent's estate. However, the court in *Maquiling* did not need to address the question confronted in our case because there is no indication in *Maquiling* that alimony was to be paid for a limited timeframe.

Similarly, in *Sedarous v. Sedarous*, 285 *N.J.Super.* 316, 666 *A.*2d 1362 (App.Div.1995), *certif. den.*, 144 *N.J.* 172, 675 *A.*2d 1121 (1996), the court also did not need to address the issue of limited alimony when it concluded that the Federal Employee Group Life Insurance Act ("FEGLIA"), 5 *U.S.C.A.* §§ 8701–8716, did not preempt a court from imposing a constructive trust on the proceeds of a group life insurance policy that the paying spouse had made payable to his sister, rather than his ex-spouse.

In another case, a trust was created to continue alimony payments. In *Jacobitti, supra*, 135 *N.J.* at 571, 641 *A.*2d at 535, the court affirmed the equitable remedy of requiring the husband to fund a trust to be used to secure his alimony payment of $4,200 per month, even though the trust would make payments to his wife after his death. The court rejected the argument that this was contrary to *N.J.S.A.* 2A:34–25, which provides that alimony terminate upon the death of the payer spouse. Rather, the court concluded, on these unique facts, that this was an "appropriate

equitable remedy" to fulfill the Legislature's intent in authorizing life insurance for the protection of a dependent spouse "in the event of the payer spouse's death." *Id.* at 574, 641 *A.*2d at 536–37. In *Jacobitti,* the wife suffered from MS, was progressively deteriorating and had health care expenses that exceeded $1,000 per month. Her husband was well off, but was too old to reasonably qualify for life insurance. The trust remedy was created for the protection of the ex-spouse. That trust was to make payments for the wife's life. However upon her death, the corpus of the trust reverted to the husband or his heirs; it did not become part of the wife's estate. Thus even there, the trust was to continue alimony payments, but it did not create a windfall for the wife's estate upon her death.

In *Raynor v. Raynor,* 319 *N.J.Super.* 591, 726 *A.*2d 280 (App. Div.1999), the Appellate Division held that insurance proceeds payable to the decedent's second wife could be used to pay for the college expenses of the decedent's children, where the Final Judgment of Divorce from his first wife required him to continue his employer-provided life insurance, with his children named as irrevocable beneficiaries and his first wife as trustee, and he had not fully complied with that requirement. Thus, the court ordered the proceeds of insurance to be distributed to a person other than the named beneficiary to satisfy child support obligations. The Final Judgment of Divorce had required the children to be named as irrevocable beneficiaries and as such, an "equitable assignment" was created in the policies for their benefit. See also *Grotsky v. Grotsky,* 58 *N.J.* 354, 277 *A.*2d 535 (1971) (requiring life insurance to secure child support obligations); *Kiken v. Kiken,* 149 *N.J.* 441, 694 *A.*2d 557 (1997) (college expenses payable from decedent father's estate where property settlement did not provide that parental support obligation terminated at death); *DeCeglia v. Colletti,* 265 *N.J.Super.* 128, 625 *A.*2d 590 (App.Div.1993) (child support could be recovered from the decedent's estate and his insurance policies would be available for these payments even though the child was not the named beneficiary).

In *Head v. Metropolitan Life Insurance Company*, 449 *N.W.*2d 449 (Minn.Ct.App.1990) the Minnesota Court of Appeals did not limit an ex-spouse's claim to life insurance, but awarded the full amount to her. In that case, however, the alimony award was $1,000 per month, but was permanent. That case did not involve alimony paid over a limited timeframe.[1]

Unfortunately, there are no cases in New Jersey that squarely address the issue raised here where the obligor died, alimony is to be paid for a specified timeframe and the insurance policy considerably exceeds the remaining obligation. Cases from other states, however, provide guidance. In Florida, life insurance can be required as a security for alimony support obligations and this amount is not necessarily limited to arrearages that are owed at death. *Sobelman v. Sobelman*, 541 *So.*2d 1153 (Fla.1989). In *Younge v. Younge*, 41 *P.*3d 966 (Okla.2002), the Oklahoma Supreme Court held that a spouse who was required to pay alimony for 120 months could be required to maintain life insurance for the ex-spouse's benefit, but the lien on the insurance proceeds was not to be in excess of the alimony due and unpaid at the time of the obligor's death. This provides support for limiting plaintiff's award to the amount of alimony owed to her, but could be read also as requiring payment only of alimony arrears, not payment of alimony through the end of a specified timeframe.

In another analogous case, *Serrano v. Hendricks*, 400 *N.W.*2d 77 (Iowa Ct.App.1986), the Appellate Court affirmed the lower court which had allowed an ex-spouse to receive $300 per month from a $90,000 group life insurance policy, but only until she dies, remarries or attains 65. Then, the balance of the funds were to become the property of the policy's named beneficiary (in this case, the daughter of the divorced couple). The court agreed that

---

[1] In another case involving permanent alimony (rather than limited alimony), the Mississippi Supreme Court limited the insurance proceeds for the ex-spouse, but there, the Property Settlement Agreement had provided that the insurance entitlement be decreased $4,000 per month. *Hodges v. Hodges*, 807 *So.*2d 438 (Miss.2002).

the insurance policy was to function as security for the support obligation and limited the recovery to that set forth in the divorce decree. Therefore, similar to the present case, *Serrano* is authority for limiting plaintiff's award to $2,000, and the balance going to the named beneficiaries.

The same result was reached by the Michigan courts. In *Merchant v. Merchant,* 130 *Mich.App.* 566, 343 *N.W.*2d 620 (1984), the court limited payment of the insurance policy to the amount of child support arrearages or child support owed at the decedent's death; the balance of the proceeds was paid to the named beneficiary.

In *Monreal v. Monreal,* 422 *Mich.* 704, 375 *N.W.*2d 329 (1985), the court upheld the lower court ruling that allowed life insurance to be used for a minor's support, but ruled that the remainder would then be paid into the decedent's estate when the child reached 18 because the insurance obligation was intended as a security for the decedent's support obligation.

Therefore, in cases where the insurance obligation functions as security for the support obligation, courts in other states have shown a willingness to limit payment of insurance proceeds to conform with the underlying obligation and avoid a windfall to the supported spouse or his/her estate.

Here, the plaintiff is entitled to at least a portion of the insurance proceeds. The Final Judgment of Divorce provided that she was to be made the beneficiary of insurance in the amount first, of $20,000 which then reduced to $15,000. The Court has not been provided with a copy of the actual policies designating the plaintiff as beneficiary, but no real dispute was raised by the plaintiff's daughters that she should have been so designated. Furthermore, there is no dispute that the plaintiff's daughters were named as the beneficiaries in 2001. A person who is required to be named as the beneficiary of life insurance under a divorce decree has a vested equitable interest in such life insurance. 22 *Causes of* Action, § 463, Sec. 2. See *Travelers Ins. Co. v. Johnson,* 579 *F.Supp.* 1457 (D.N.J.1984). Given the terms of the

Final Judgment of Divorce, this Court finds that plaintiff does have an equitable interest in a portion of the policy proceeds. *See Della Terza v. Della Terza,* 276 *N.J.Super.* 46, 647 *A.*2d 180 (App.Div.1994). The question, then, is the amount of that equitable interest.

Here, plaintiff is owed only $2,000 in alimony yet, the policy (policies) would pay $15,000. Plaintiff's attorney asserted at oral argument that this result was the actual intent of the parties at the time of the divorce. However, he did not submit a certification to that effect, even though the issue was raised at oral argument. Plaintiff contends that if the parties had wanted to further reduce the face amount of the insurance, they could have done so.

However, the language used in the Final Judgment of Divorce is not ambiguous. Because of this, parole evidence regarding its interpretation would not be admissible. The meaning of the document should be determined from the four corners of the document. Here, the insurance requirement was plainly intended as "protection" or as "security" for the decedent's alimony requirement. The obligation ended when the alimony was no longer due. There was no independent duty—aside from securing the alimony obligation—to provide life insurance for the plaintiff. She had her own life insurance. The Judgment of Divorce allowed plaintiff to "... retain the life insurance policies in her possession and defendant hereby waives his interest in same." Final Judgment of Divorce, Paragraph H. Because the insurance obligation was a security for the alimony obligation, this affects the availability or extent of the recovery. "Generally, an obligation to maintain insurance and the entitlement of the insured's former spouse or child to the proceeds will not survive the satisfaction of the obligation the insurance was intended to secure." 22 *Causes of Action* § 463, § 2. In this case, because only $2,000 in alimony was due at the time of decedent's death, the plaintiff would gain a windfall if she were to receive the full $15,000.

Moreover, this is not a case such as *Jacobitti* where the equities favor plaintiff. In *Jacobitti, supra.,* 135 *N.J.* at 571, 641 *A.*2d at 535, the supported spouse had insurance and was progressively deteriorating. She was totally dependent on her ex-husband's support, yet, he was too old to qualify for insurance. Similarly in *Davis, supra.,* 184 *N.J.Super.* at 430, 446 *A.*2d at 540, the ex-spouse was handicapped and totally dependent. However here, there is no evidence that the plaintiff is blind, disabled or totally dependent on the remaining $2,000 in alimony owed by the decedent. Indeed, the Final Judgment made a distribution of property to the plaintiff that included real estate, a car, $44,000 in cash and a portion of the decedent's pension. There is no information about those pension payments now that the defendant has died. Thus, on the record here, there is no indication that the $15,000 policy is needed to maintain or achieve the standard of living established during the marriage. See *Crews v. Crews,* 164 *N.J.* 11, 751 *A.*2d 524 (2000).

The "protection" that plaintiff is owed is the $2,000 in alimony due to her under the Final Judgment of Divorce. The Court does not find on these facts that the full $15,000 should be paid to plaintiff and indeed, this Court finds that such a result would create an unfair windfall for plaintiff.

In addition to the $2,000 in alimony, plaintiff shall also be granted attorney fees and costs in the amount of $930. At its own discretion, the Court may consider whether to award attorney's fees and should consider, in addition to the information required to be submitted pursuant to *R.* 4:42–9, the following:

1. The financial circumstances of the parties;

2. The ability of the parties to pay their own fees or to contribute to the fees of the other party;

3. The reasonableness and good faith of the positions advanced by the parties;

4. The extent of the fees incurred by both parties;

5. Any fees previously awarded;

6. The amount of fees previously paid to counsel by each party;

7. The results obtained;

8. The degree to which fees were incurred to enforce existing orders or to compel discovery; and

9. Any other factor bearing on the fairness of the award. [*R.* 5:3–5].

Here, plaintiff was compelled to expend her funds to obtain payment of insurance proceeds where the decedent wrongfully changed the beneficiary of the insurance to exclude the plaintiff. She should not have had to incur this expense. Counsel fees sought herein appear reasonable for the result achieved, are reasonable in amount and in the time expended. Additionally and for the same reasons, the Court will award plaintiff the costs of bringing this action. These amounts shall be satisfied from the insurance proceeds. However, if this insurance is not available (which may have resulted from the defendant's own acts), then these amounts can be satisfied from the defendant's estate. See *N.J.S.A* 2A:34–23. A lien in the amount of $2,930 is hereby imposed against the insurance proceeds and the estate to be satisfied first from the insurance and second, from the estate if the insurance does not fully satisfy this amount.

### 2. *Passbook Account*

■ The plaintiff's request that the defendant's estate be restrained from the sale of any property or that a lien be placed against the property of the estate because of an alleged claim based on a $5,000 passbook account is denied. The plaintiff contends that the defendant opened a passbook savings account three days after the divorce was granted and offers a copy of the February 26, 1996 statement as proof. However, the defendant remained a holder of the account and the plaintiff has not offered any proof that the defendant was under any obligation to maintain this account for the benefit of the plaintiff. Indeed, the defendant closed the account in September 1996. The Final Judgment of Divorce does not provide for such an account or that such monies held in the account were part of equitable distribution. Therefore, the plaintiff has asserted no legally cognizable basis for her claim and her claim to this $5,000 is denied.