**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0602-17T4

ESTATE OF TERRI N. FASANO
ex rel. ROBERT FASANO, n/k/a
TERRI N. FASANO,

      Plaintiff-Respondent,

v.

GAIL FASANO,

      Defendant-Appellant.

_____

Argued October 31, 2018 – Decided September 11, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1380-06.

Toni Belford Damiano argued the cause for appellant (Damiano Law Offices, attorneys; James Belford Damiano and Toni Belford Damiano, on the brief).

Kelsey Dru Mulholland argued the cause for respondent (Ruvolo Law Group, LLC, attorneys; Kelsey Dru Mulholland, of counsel and on the brief).

PER CURIAM

Defendant Gail Fasano and the late Terri N. Fasano, f/k/a Robert Fasano,[1] were married on December 6, 1970 until their marriage was formally dissolved by the Family Part in a Judgment of Divorce (JOD) dated May 23, 2007. The parties had three children who were all emancipated at the time the court entered the JOD. The parties entered into a Property Settlement Agreement (PSA) which addressed and resolved all of the issues associated with the dissolution of the marriage. The court incorporated the PSA into the JOD.

Terri N. Fasano[2] died on April 27, 2017. At the time of her death, Terri was married to Diann Castiaux, who became the executrix of Terri's estate and the beneficiary of a life insurance policy in the amount of $306,000. On July 21, 2017, defendant filed an ex parte application and order to show cause (OTSC) in the Chancery Division, Family Part, to temporarily restrain plaintiff's estate from: (1) alienating, hypothecating, or in any way limiting in value any

---

[1] Defendant filed a certification dated July 21, 2017 in the Family Part in which she averred that while the divorce proceedings were pending before the Family Part, decedent transitioned from male to female "and became known as Terri Nicole Fasano."

[2] Because defendant's last name is also Fasano, we will at times refer to Terri N. Fasano as "Terri" or "decedent." We do this in the interest of clarity. We do not mean to imply any disrespect.

A-0602-17T4

of the assets of the decedent's Estate; (2) imposing a constructive trust over the assets of the Estate in the amount of "at least $240,000" based on decedent's failure to maintain a life insurance policy naming defendant as beneficiary; and (3) preserving any claims that may be transferred for adjudication before the General Equity Part.

On July 25, 2017, the Family Part granted defendant's ex parte OTSC and temporarily enjoined decedent's Estate accordingly. The judge also ordered the Estate's representative to appear before the Family Part on August 18, 2017, and show cause why the Estate should not be held responsible for violating defendant's rights under the PSA based on decedent's "willful failure" to maintain a life insurance policy "as provided in the Final Judgment of Divorce dated May 23, 2007." The OTSC contained a final handwritten provision permitting the parties' attorneys to request a telephone conference with the court "promptly following the service of this order upon plaintiff[.]"

On August 18, 2017, the Family Part judge heard oral argument from counsel and reserved decision. In an order dated August 28, 2017, accompanied by a Statement of Reasons, the court granted defendant's request to hold the Estate "responsible" for decedent's "willful violation of litigant's rights for her willful failure to have maintained a life insurance policy of at least $240,000

3                                                    A-0602-17T4

with defendant as beneficiary as provided in the [JOD.]" However, the court denied defendant's requests: (1) to restrain the Estate or its designees from disposing of the assets of the Estate or otherwise diminishing its value; (2) to require the parties to preserve any claims for adjudication before the General Equity Part; and/or (3) to impose a $240,000 constructive trust on the Estate. The judge granted defendant's application for the Estate to pay the counsel fees she incurred related to the emergent application for the OTSC.

The judge directed the executrix of the Estate to pay defendant $9000 from the proceeds of decedent's $306,000 life insurance policy, within fourteen days of the date of the order and, conversely, denied the executrix's request to reduce that figure to $6000. Finally, the judge denied the executrix's request to compel defendant to pay counsel fees incurred by the Estate in defense of this action.

Against this backdrop, defendant now appeals arguing the Family Part misconstrued the PSA and misapplied the holding and reasoning in Konczyk v. Konczyk, 367 N.J. Super. 551, 561 (Ch. Div. 2003), aff'd o.b., 367 N.J. Super. 512 (2004), when it denied her application to enforce the provision that required decedent to maintain a life insurance policy for at least $240,000 naming her as the sole beneficiary. In response, the Estate argues the Family Part's decision properly balanced settled principles of contract law with the equitable

considerations this court endorsed in <u>Konczyk</u> to reach a fair, legally correct outcome.

After a careful review of the record before us, we are satisfied the Family Part misconstrued the nature of the legal controversy in this case and consequently reached a legally incorrect conclusion. We are thus compelled to reverse the court's ruling and remand the matter for the court to make specific factual findings and thereafter fashion an appropriate remedy consistent with the parties' intent as reflected in the PSA.

I

Under Article II, Section 2.3 of the PSA, the husband agreed to pay the wife $3000 per month commencing on June 1, 2007, and alimony would terminate "only upon the death of either party, the remarriage of [the wife], or [the wife's] cohabitation with an unrelated adult male in a relationship tantamount to marriage." Section 2.10 addressed the effect the husband's retirement would have on the wife's entitlement to receive alimony as described in Section 2.3:

> The parties agree that even if [h]usband retires before age 63 1/2, the alimony to be paid by [h]usband to [w]ife shall not be modifiable under any circumstances, except for circumstances beyond [h]usband's control. However, if [h]usband retires at age 63 1/2, and has no other income whatsoever except for 1/2 [h]usband's

5

pension, [h]usband's 401(k), and [h]usband's Social Security benefits, alimony shall be reduced to $18,000.00 per year until [h]usband reaches age 65. When [h]usband reaches age 65 years, and has no other income whatsoever except for 1/2 [h]usband's pension, [h]usband's 401(k), and [h]usband's Social Security benefits, alimony shall terminate.

The above reduction to $18,000.00 upon [h]usband's retirement at age 63 1/2 and the termination of alimony if [h]usband retires at age 65 is based exclusively on [w]ife receiving one-half of [h]usband's pension benefit as of the date of [its] distribution to [h]usband. More specifically, [w]ife is to receive the exact same amount of [h]usband's pension benefit each month as that received by [h]usband.

The parties addressed the equitable distribution of the marital estate in Article III of the PSA. Under Section 3.4, the parties agreed to divide the husband's employment pension plan "equally, including but not limited to any passive or active accretion in value through the date of distribution by way of a QDRO." To ensure defendant would not lose this income stream in the event the husband died before the plan began to distribute pension benefits, Section 3.4 included the following language:

The parties acknowledge and agree that it is their intention that [w]ife be the named beneficiary on all the survivor benefits available through [h]usband's pension in the event [h]usband shall die prior to the pension being in pay-out status, and they shall so direct the plan administrator to carry out this intention. Wife receiving [h]usband's survivor benefit is in consideration for

6

> [h]usband only having to provide $240,000 in life insurance on his life with [w]ife as the sole beneficiary. The parties shall equally share the cost of preparation of a Q.D.R.O. through a mutually agreed upon professional.
>
> [(Emphasis added).]

Terri married Diann Castiaux sometime after her divorce from defendant became final on May 23, 2007. By the time Terri reached the age of sixty-five in November 2013, she had been paying defendant $3000 alimony on a monthly basis for six years. The record shows Terri emailed her matrimonial attorney to determine whether she could remove defendant as a beneficiary of the life insurance policy. The attorney responded that under Section 4.1 of the PSA, Terri's obligation to support defendant "ceases at your turning age 65 (because she can collect on her half of the pension) you don't have to maintain the policy at that point."

Acting on counsel's advice, Terri sent an email on December 1, 2016, directing the benefits administrator of her employer to begin the process "towards retiring as of 6/30/17 with pension benefits to begin 7/1/17." She made clear that her pension "was subject to a QDRO" and that she intended to have "100% Joint & Survivor Annuity" to her current spouse who was then sixty-nine years old. Unfortunately, Terri was unable to realize her plans. In December

2016, she suffered a debilitating stroke that prevented her from ever returning to work. Her employer placed her on disability coverage that was set to expire on June 4, 2017. Terri died on April 27, 2017, at age sixty-eight without receiving the documentation required to finalize her retirement. Her employer sent her surviving spouse compensation for five unused vacation days from 2016.

II

In this cause of action, defendant sought to protect her rights to receive fifty percent of decedent's pension benefits under the QDRO the parties executed pursuant Article III, Section 3.4 of the PSA. Terri's pension is a marital asset subject to equitable distribution; payments received from the distribution of this asset are not alimony. Innes v. Innes, 117 N.J. 496, 514 (1990). Unfortunately, both the parties and the Family Part judge erroneously characterized defendant's claim as based on her right to receive alimony. This threshold mischaracterization of the legal issue involved in this case misdirected the court's analysis and ultimately led to a legally untenable outcome.

Under Section 3.4 of the PSA, Terri was obligated to maintain a $240,000 life insurance policy naming defendant as a beneficiary, to protect defendant's right to receive her fifty percent share of the pension benefits. In her December

1, 2016 email, Terri informed the pension Benefits Administration that she wanted "to start the process towards retiring as of 6/30/17 with pension benefits to begin 7/1/17." She also reminded the recipient of the email that her pension "is subject to a QDRO based on a divorce."

The response email from the Benefits Administration dated December 5, 2016, acknowledged the feasibility of Terri's desire to start receiving pension benefits on July 1, 2017. With respect to defendant's share of the pension benefits, the Pension Administration stated: "Also, the QDRO will be offset from your benefit based on the terms of the document." We know Terri died on April 27, 2017. Based on this record, we do not know whether Terri's death negatively affected defendant's rights to receive her share of the pension benefits under the QDRO. Inexplicably, the parties did not address this issue in their appellate briefs and appellate counsel were unable to shed light on the matter when we raised this question at oral argument.

The trial judge concluded Terri willfully violated defendant's litigant's rights when she failed to maintain the $240,000 life insurance policy naming defendant as the beneficiary. The judge reached this conclusion based on the erroneous premise that this insurance policy was intended to secure the payment of alimony. Relying on Judge Suter's opinion in Konczyk, which involved a life

insurance policy to secure the payment of alimony, 367 N.J. Super. at 554, the judge found defendant was entitled to receive $9000 alimony payments "representing the amount of alimony she would have received before plaintiff's retirement, had she lived[.]" The judge ordered the Estate to pay this alimony award from the $306,000 life insurance proceeds. However, defendant's right to receive alimony is based on Article II, Section 2.3 of the PSA, which states that alimony "shall be subject to termination . . . upon the death of either party[.]" Defendant was not entitled to receive the $9000 of alimony ordered by the court.

We are thus compelled to reverse the trial court's order and remand this matter for the court to determine what affect Terri's death had on defendant's right to receive her fifty percent distribution of the pension benefits as provided in the QDRO. If defendant is receiving her share of the pension benefits consistent with the QDRO, she is not entitled to receive any part of the proceeds of Terri's life insurance policy that named Castiaux as beneficiary. If Terri's death negatively affected defendant's pension benefits under the QDRO, the court must make specific findings, supported by competent evidence on the record, describing with particularity the nature and extent of any reduction in

benefits. The judge thereafter must fashion an appropriate remedy consistent with and guided by the parties' intent as reflected in the PSA.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION